No. 10,957.

SUCCESSION OF MRS. P. A. DELACHAISE VS. CHARLES B. MAGINNIS.

1. This being a suit for slander of title, and defendant having answered pleading title in himself, based on the claim that the batture in controversy did not exist at date of purchase, the initial burden of proving its non-existence lay on defendant; but as this involves the proof of a negative, that burden is discharged when he produces evidence raising a strong presumption of the truth of the negative, and the burden is then shifted to the party holding the affirmative to destroy this by countervailing testimony.

2. The principle underlying and usually determining the title to alluvion in our system is expressed in the equitable maxim *Qui sentit onus, sentire debet et commodum.*

3. Another principle equally germinal is that title to alluvion is a purely accessory right attaching exclusively to the riparian estate, and incapable of existing without it.

4. A party who sells the entire estate owned by him up to the line of a public road, or street bordering the river, and beyond which no property susceptible of private ownership exists at date of sale, retains no estate to which the accessory right to future alluvion could attach.

5. The intervention of a public road or street does not prevent the owner of the estate adjacent thereto from being considered as the front or riparious proprietor, when nothing susceptible of private ownership exists between the road or street and the river.

6. Such adjacent estate must bear the whole loss resulting from any encroachment by the river, furnishing space for a new road or street if the old is washed away, and the law, as well as justice, awards him the corresponding benefit from accession.

7. The vendor of the lots adjacent to the road is subject, on the other hand, to no risk of loss, and has, therefore, no legal or equitable claim to any gain by future accretion.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Robert J. Dugué* for Plaintiff and Appellee:

A sale of property not fronting on the river, or the levee, but on Water street, does not convey title to the Mississippi river.

When a deed mentions as the front boundary a certain street, or gives the depth from a fixed rear line, or the levee, the batture and right of accretion do not pass, but remain in the vendor. 35 An. 461, 209; 26 An. 310.

When an act is free from ambiguity parol evidence is not admissible to vary explain or contradict it. 41 An. 18.

Error, unless alleged, can not be proved.

Accretion belongs to the owner of the soil situated on the edge of the water. C. C. 509.

Joint owners can not prescribe against each other. 42 An. 846.

### *Gilmore & Baldwin* for Defendant and Appellant:

1. He, whose property is adjacent to or on the edge of the river, is a riparian proprietor. Art. 509, Rev. C. C.

2. The question whether property is adjacent to or on the edge of the river is a question of fact to be decided by the actual situation and character of the land, and the mere words by which the deed describes the estate are not conclusive. The case of Attius, cited in 6 M. 63; Morgan vs. Livingston, 6 M. 237; Bass vs. State, 34 An. 490; Ruch vs. City, 43 An. 275.

3. The levee and batture outside, which is not susceptible of private ownership, form part of the bank of the river, do not exist beyond it, and can not be viewed in law as intervening between the front property and the river. Heirs of Leonard vs. Baton Rouge, 30 An. 280; Morgan vs. Livingston, 6 M. 229; Art. 457, Rev. C. C.

4. The intervention of a public road between the front proprietor and the river does not deprive him of his right to the accretion, because the road is part of his property *quoad commodum et incommodum*, and in a legal sense does not exist between him and the stream. Morgan vs. Livingston, 6 M. 231; Municipality No. 2 vs. Orleans Cotton Press, 228, 229; The case of the Commune de Roques, Sirey, 1829, 2d part.

5. The marking of a street upon a plan made by the proprietor of a faubourg, and the subsequent sale of property in accordance with that plan, and in reference to the street, constitutes a dedication of the street to public use. McDonogh vs. Callaway. 8 R. 92; Burthe vs. Fortier, 15 An. 9; Baton Rouge vs. Bird, 21 An. 245; Sarpy vs. Municipality No. 2, 9 An. 598; McNeill et al. vs. Hicks & Howell, 34 An. 1092; City of Lafayette vs. Holland, 18 La. 287; Heirs of Leonard vs. Baton Rouge, 39 An. 283.

6. It is not necessary, in order to make the dedication complete, that the public should immediately use the property dedicated. Ice Co. vs. City, 43 An. 224.

7. No one can have any private ownership in the public streets of the city. Pothier, Contract of Sale, 13; Daublin vs. Mayor, 1 M. 187; Judge Preston's Opinion, Xiques vs. Bujac, 7 An. 505; Police Jury vs. Foulhonze, 30 An. 66.

8. The sovereign alone can change the destination of property dedicated to public use. Mayor vs. Hopkins, 13 La. 331.

9. It is only where there exists at the date of the acquisition of property, separated from the river only by a public street or road, and the levee batture, susceptible of private ownership outside the levee, that the batture does not pass without special mention in the deed; if the batture be formed subsequently to the purchase it belongs to the owner of the front as an accessory to his land. Barré vs. City, 22 An. 612; Ferriere vs. City, 35 An. 209; Cochran vs. Fort, 7 N. S. 625; Livingston vs. Heerman, 9 M. 721; Cambre vs. Kohn, 8 N. S. 578; Cire vs. Rightor, 11 L. 140.

10. Where one purchases a distinct and specified object, such as the Stock Landing property, any surplus over the land described in the deed by streets and measurements should belong to the vendee. Innis vs. McCummin, 12 M. 428.

11. The language used in an act of sale must be construed against the vendors. Morgan vs. Livingston, 6 M. 613; Art. 2474, C. C.

W. S. *Benedict* on the same side.

The opinion of the court was delivered by

FENNER, J.   This controversy presents for solution a question of the ownership of a piece of batture property lying on the Mississippi river in this city in front of Water street, which runs parallel to the river, and between Louisiana avenue and Delachaise street, which run at right angles to the river.

We shall simplify the case by excluding unnecessary details of successive derivative titles, and all other matters not essential.

The common authors of the conflicting titles were Mr. and Mrs. P. A. Delachaise, who owned a large riparian estate on the Mississippi river, and who died prior to 1855, leaving three children their sole heirs—Pierre Auguste, Louis Philippe and Elizabeth Aline Delachaise—to whom this real estate descended in equal undivided ownersnip.

About 1855 these three heirs, for the purpose of selling or partitioning this property, caused the same to be divided into lots, squares and streets, and had a plan thereof made and placed on record, which plan, according to the official copy produced in the evidence, exhibits Water street as the extreme front street parallel to the river, and also exhibits Louisiana avenue and Delachaise street running perpendicularly thereto.

On the 20th of April, 1855, a notarial act of partition was passed between the three co-heirs and joint owners for the purpose, as declared in the act, of making "a partition between the said three heirs of certain real estate situate in the parish of Jefferson, and belonging to the said succession" of their mother.

This act assigns to each of the heirs, in exclusive ownership, certain squares and portions of ground, described as bounded by streets as represented on the plan above referred to, and further contains the following statement:   "All which squares and portions of ground are more particularly described and delineated on the an-

nexed plan of the said faubourg Delachaise and Plaisance, to which said parties refer as making part of this act."

It appears, however, that accidentally, or for some undisclosed reasons two squares of ground, including the one with which we are presently concerned, were omitted from the partition.

At all events, by separate acts of sale, passed respectively on July 19 and August 13, 1855, Elizabeth Aline and Pierre Auguste Delachaise conveyed to their brother, Louis Philippe, their respective third interests in the property described as follows:

"All his right, title and interest, being one undivided third part of, in and to two squares of ground with the buildings thereon, and all the rights, ways, privileges and appurtenances thereto belonging, situate in the faubourg Plaisance, parish of Jefferson, aforesaid, and known by the name of the Stock Landing. One of said squares measures 330 feet 10 inches front on Water street, about 90 feet front on Delachaise street, 330 feet 10 inches front on Levee street, and about 90 feet front on Louisiana avenue, and the other square is designated by the No. 2, and measures 330 feet 10 inches front on Levee street, 92 feet front on Delachaise street, 320 feet front on Chippewa street, and 177 feet 7 inches front on Louisiana avenue.

" The said undivided third part of the said property belongs to the present vendor by inheritance from her mother, the late Madame Delachaise."

The batture in question lies in front of Water street.

We need go no further in the chains of title, because the above brings us to the point at which the conflicting claims arise.

The plaintiff's succession is the successor and legal representative of Pierre Auguste Delachaise, and claims, substantially, that the property above referred to, held in indivision between Pierre Auguste and his brother and sister, was a riparious estate with all the rights and burdens appurtenant thereto; that the conveyance above recited, being restricted to the line of Water street, did not transfer a riparious estate, and, therefore, left him, Pierre Auguste, in full possession of all his antecedent riparian rights, including the right to alluvion in front of Water street, then existing or thereafter formed.

Defendant is the assignee, by successive titles, of Louis Philippe Delachaise, and, while conceding that the sale from Pierre Auguste would not have conveyed the latter's interest in any alluvion already

existing and susceptible of private ownership beyond Water street at date of sale, he claims that the batture now in controversy did not exist at said date, but was formed thereafter, and that there being nothing between the property conveyed and the river, except a public street or road, the property so conveyed was in law a riparious estate, entitling the vendee to any alluvion thereafter accruing in its front.

Under the above statement of the conflicting claims, it is apparent that there are two pivotal questions, viz.:

1. The question of fact, whether or not, at date of sale, in 1855, there did exist in front of Water street any alluvion then susceptible of private ownership.

2. The question of law, whether, if there existed no such alluvion, the conveyance from Pierre Auguste to Louis Philippe operated the transfer of the riparious estate with its accessory rights.

## I.

As to the question of fact, plaintiff invokes the rule that the action is one for slander of title, and that defendant, in his answer, having pleaded title in himself, assumes the position of plaintiff in a petitory action, and is bound to prove his title.

The rule is undoubtedly sound and well established, and threw upon defendant the initial burden of making proof going to show that no batture susceptible of private ownership existed at date of sale; but, inasmuch as this involves the proof of a negative and is an exception to the general rule that the party holding the affirmative must prove it, demonstrative evidence is not required, and the burden of proof may be shifted when sufficient facts are established to raise a strong presumption in favor of the truth of the negative.

As stated by text writers "the burden of proof in any proceeding lies at first on that party against whom judgment would be given if no evidence at all were produced on either side. As the proceeding goes on, the burden of proof may be shifted from the party on whom it rested at first, by his proving facts which raise a presumption in his favor." 7 Am. and Eng. Encyc. of Law, p. 95; 1 Phillips on Ev. 552.

In a case precisely similar, Judge Martin used the following language: "The plaintiff alleged in his petition that at the time of the sale to Poeyfarré, there existed no batture before the trapezium, or

that if one existed, it was a batture under water, and the *onus pro-bandi* lay on him as to the height of it at least; and perhaps, as negative propositions are not susceptible of proof, the defendants were bound to prove that there was a batture." Morgan vs. Livingston, 6 Mart. O. S. 113.

The defendant here has introduced two witnesses who prove that in 1855, and even as late as 1889, the levee was immediately in front of Water street, and even partially encroached on the street, and that but for the protection of the levee, Water street itself would have been under water. It is further proved that when in 1889 the present defendant undertook to advance the levee, the batture which had been forming was still below the surface of the water, and had to be artificially filled several feet before it became susceptible of private ownership.

The plaintiff has offered no evidence whatever on this point, and, while he now criticises the sufficiency of defendant's evidence, we think it at least sufficient to discharge the initiatory burden resting on defendant, and to throw on plaintiff the *onus* of countervailing testimony. We might go further and say that it fully convinces us that in 1855 there existed no batture in front of Water street susceptible of private ownership, and that between the line of the property conveyed and the water of the river there was nothing except the street and levee.

## II.

The principle underlying and determining the title to alluvion in our system is the equitable one expressed in the maxim, *Qui sentit onus, sentire debet et commodum.* As Portalis, in his "Exposé des Motifs" of the Napoleon Code, quaintly states it, "There exists, so to speak, an aleatory contract between the riparious owner and nature, whose action may at any moment despoil or increase his estate, in which sense it may be said that rivers give or take away like chance or fortune." If it takes away, the owner must bear the loss; if it gives, justice accords him the gain.

Another principle is that title to alluvion is a purely accessory right, attaching exclusively to riparian proprietorship, and incapable of existing without it. This is implied in the very name given to the right as a right of *accession;* and the chapter of the code under which the provisions relative to alluvion are found is headed thus:

" Of the Right of Accession to What Unites or Incorporates Itself the *Thing.*" As strongly stated by this court in the leading case on the subject, riparian ownership is " of the essence of the right of alluvion; the alluvion is but the accessory; the front tract is the principal; the former can not exist without the latter." Municipality vs. Cotton Press, 18 La. 219.

When these two germinal principles are applied to the facts of the instant case they at once annihilate the title asserted by plaintiff.

When Pierre Auguste Delachaise sold his interest up to the line of Water street he sold all that he owned or could sell. Nothing intervened between that line and the river except the street and the levee, both of which were public things (C. C., Art. 454), *hors de commerce*, and which he did not own and could not sell. He thus stripped himself of his whole ownership, and retained no estate, riparious or other, to which the right of future accession could possibly attach; and as the accessory can not exist independently of the principal thing, his conveyance of the latter necessarily carried with it the accessory.

The other principle is equally fatal, because after that sale he had no longer any interest in the aleatory contract between nature and the riparian owner. He could suffer no harm from any encroachments the river might make. If it swept away the levee and the street he suffered no loss thereby because he owned neither, and would be under no obligation to replace them; and if the river ate into the land beyond the street evidently that loss would fall, not on him, but on his vendee. It would be a strange perversion of the maxim, *qui sentit onus*, etc., if he could thus cast the whole risk of loss on his vendee, while retaining for himself the whole chance of gain.

The earlier decisions of this court on the subject of alluvion are the brightest jewels in the diadem of Louisiana jurisprudence. Taken in connection with the remarkable briefs of counsel they may be said to exhaust the learning and science bearing on the subject, and they leave to succeeding judges little more than the humble task of faithfully applying them. In these decisions we find authority ample to solve every question involved in this case.

The first case that arose was that of Jean Gravier vs. The Mayor and Aldermen of New Orleans, which was decided by the Superior Court of the Territory of Orleans in 1807, and is not included in our published reports, which only began with the year 1809. We find a

statement of the case, and the opinion and decree in full, in a note contained in the first volume, page 451, of Harrison's Condensed Reports of Louisiana, a work published in 1839, which never acquired any circulation, and is now out of print or very rare. The case is very similar to the instant one.

It appear that Gravier owned a riparious estate contiguous to the city, with a public road along the river in its front. He laid out that part within the road into lots, forming a suburb. He sold the lots which fronted the road by fixed boundaries, according to a map on which the lots are delineated, and none of the boundaries passed beyond the road.

In 1804, after the suburb had been incorporated into the city, his successor, Jean Gravier, claimed the alluvion formed in front of these lots, and advanced the levee so as to take in the batture. The corporation resisted his appropriation of this batture, and Gravier brought his suit to be quieted in his possession and for an injunction against disturbance. So far as Gravier's title was concerned, it will be seen, the case presents the precise issues involved in this case, as heretofore stated by us, viz.: (1) The question of fact whether or not at date of sale of the lots there existed in front of them any batture susceptible of private ownership; and (2) the question of law whether, if no such alluvion then existed, the conveyance of lots fronting the road divested Gravier of his riparious rights.

The court in its opinion reversed the order which we have pursued, and decided, first, the question of law in the following language, every word of which is fatally applicable to plaintiff's claim: "If Bertrand Gravier had continued proprietor of the whole tract on which the faubourg had been established there would be no difficulty in determining his title to the alluvion; but Bertrand Gravier had divested himself of all title to that part of the tract on which the faubourg is established by selling the lots fronting and adjoining the highway. It is therefore important to inquire what was the situation of the batture or alluvion in question at the time when the faubourg was established, or at least when the front lots were sold, for if no alluvion had existed at that time, when Gravier ceased to be the owner of the land adjoining the high road, then it is the opinion of the court that an alluvion subsequently formed would not become the property of Gravier. The reason of this opinion

is that, if Gravier, could be considered as the proprietor of the road after selling the adjacent land, or of the levee lying between this road and a public river, he would, nevertheless, not possess that title of property which gives the right of alluvion, for the destruction of this property by the encroachment of the river would be a public and not a private loss, since it could not be appropriated to the use of any individual, and the said road and levee would have become necessarily liable to be kept in repair at the public expense."

After thus determining the question of law the court proceeded to consider the question of fact, and finding that alluvion susceptible of private ownership did exist at date of sale the alluvion was awarded to Gravier.

In the succeeding great case of Morgan vs. Livingston, 6 Mart. O. S., while the conveyance used the words *frente al rio* or *front to the river*, and while the court discusses the effect of these words as evidence of intention, yet the court distinctly says: "If the parties to the deed to Poeyfarré meant that a riparious estate should pass, their intention might be carried into effect by conveying as far as the river *in express words or by conveying everything susceptible of absolute private ownership between the line of the trapezium most distant from the front and parallel to the river, till the bank.*"     P. 234.

In point of fact the trapezium concerned was sold by defined boundaries, one of which was the public road; and the intervention of that public road and of the levee beyond it, between the line of the trapezium and the water, was assigned and discussed as a ground for denying the purchaser the benefit of a riparious estate.

In summing up the case the court announces the following as one of the final conclusions reached: "That the land sold by Gravier *de facto* extended to the river;     *     *     that the batture existing then as batture under surface of the water was, as well as the levee, a part of the bank, and the bank being a part of the river, neither can be said to be without it or between it and another object; that the intervention of a public road does not prevent the owner of an estate, which it separates from the river, from having an interest in the bank and enjoying the alluvion as well as he whose estate is washed by the river." Morgan vs. Livingston, 6 Mart. O. S. 251.

In the great case of Municipality No. 2 vs. Orleans Cotton Press, a new question presented itself, which divided the court and placed

Judge Martin as a dissenter. The question was whether the same rules governing alluvion applied to urban or rural estates, Judge Martin holding that they did not, but that the front streets and quays in front of private property in cities where *loci publici* of such a nature that the property thereof was absolutely vested in the public, and alluvion formed subsequently to the incorporation enured to the public.

But the majority of the court held otherwise, and announced, in summing up, the following propositions: "That urban property fronting on a water course is entitled to alluvion as well as rural estates, and that cities can acquire *jure alluvionis* only in virtue of a title which would constitute them front proprietors. That the defendants must be considered as owning down to the road last laid out, and that the intervention of the road does not prevent them from being regarded as front proprietors and entitled to any alluvion which now exists or may hereafter be formed between the levee and the water, subject to the public use under the administration of the municipal authorities."

We consider that the quotations we have made from the opinions in these cases are decisive of this case.

It is not denied that the defendants are owners to the line of Water street, and we have found, as matter of fact, that between that line and the river there was at the date of sale no batture susceptible of private ownership, and nothing but the street and levee. If, as repeatedly held in the quotations we have made, the intervention of such street and levee "does not prevent them from being regarded as front proprietors," and if such intervention "does not prevent the owner of an estate, which it separates from the river, from having an interest in the bank and enjoying the alluvion as well as he whose estate is washed by the river," it is difficult to imagine any ground on which the riparian rights of defendants can be resisted. These rights are strongly emphasized by our recent decision that the owner of property bounded by a street running along the river is bound to furnish new ground for a street when the river eats away the former street." Ruch vs. City, 43 An. 275.

This conclusively establishes that such an owner bears the whole loss which may ensue from encroachments of the river, and should, therefore, acquire any benefit from alluvions.

Railroad Co. vs. City et als.

We have considered the cases strongly relied on by plaintiff of Winter vs. City, 26 An. 310, and Donovan vs. City, 35 An. 461. The first is obscure and ill considered. It does not clearly indicate whether or not the alluvion in controversy existed at the date of plaintiff's purchase. If it had been formed since her purchase, the decision was erroneous, and we could give it no weight to overrule the well-considered authorities we have quoted or the sound principles on which they rest.

The *dictum* in Donovan's case, suggesting that the mere "hope" of future batture might be property resting in a riparious proprietor after he had sold the whole estate which he owned, was purely *obiter*, because the court held that the alluvion existed at time of sale. It is, moreover, unsound, as we have heretofore shown, both in reason and on authority, unless, at least, as the result of an express and unambiguous contract.

It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled and reversed, and it is now adjudged and decreed that there be judgment in favor of defendant, rejecting the demand of plaintiff and recognizing defendant as owner of the property in dispute, plaintiff to pay costs in both courts.

Judgment affirmed.