OVERTON, J.
The Lake End Lumber Company, a partnership, instituted this suit against Chester . J. Walker to.-recover judgment against the latter for $2,697, the alleged value of certain timber on land situated in the parish of Natchitoches, and the loss alleged to have been sustained by plaintiff in constructing a tramroad to remove the timber.
The cause of action is based on the following facts alleged by plaintiff: On March 4, 1918, defendant sold the* timber to R. T. Moore, trustee, and gave thé vendee a period of five years within which to cut and remove it. By deed' recorded on June 9, 1919. Moore, trustee, sold the timber acquired by him to the members of the plaintiff firm, granting to them the same term of five years within which to. remove it; and on June 20, 1921, an extension of time in which to cut and remove the timber was granted the members of the plaintiff firm by defendant, the extension to expire on March 4, 1928. Plaintiff, it is alleged, failed to record the act granting the extension. Defendant, it is set forth, discovered that plaintiff had .failed to record the extension, and taking advantage of his discovery sold the timber on March 29, 1923, to P. M. Gaddis. Plaintiff was actually engaged in exercising the rights conveyed to it, by cutting the timber, and laying railroad tracks to remove it, when it *786 was notified tfiat Gaddis claimed the ownership of the timber, and, upon investigating the public records, it is alleged, plaintiff discovered the deed to Gaddis and the fact that it had failed to record the extension which it had obtained. Defendant lived in the vicinity of the timber, and knew that plaintiff was grading the right of way for the railroad and laying the tracks, but did not notify plaintiff that he had sold the timber to Gaddis, which, had he done, would have lessened the loss and damage caused plaintiff, occasioned by constructing said railway. The petition then continues by alleging;
“That as between the said defendant and your petitioner the sale and jhe extension of time granted were binding, legal and valid, and your petitioner was the owner of said timber, subject to the right to cut and remove it at any time prior to March 4, 1028, and the said Walker (defendant) is liable to your petitioner for the value thereof as well as for the actual loss and damages petitioner has sustained by reason of his illegal and wanton act.”
The petition then sets out the various items of the loss and damage occasioned, amounting in the aggregate to the sum above stated, and concludes with a prayer for judgment for the amount of that loss and damage, with legal interest from judicial demand.
The petition, reciting the above facts, -was served on defendant. Defendant made no appearance, and, in due course judgment by default was rendered against him, though not for the full amount prayed for, but for only $2,235 thereof. It is said that due to a mishap the suit was not defended in the lower court; but, as this has nothing to do with the appeal before us, we mention it no further.
Defendant has appealed from the judgment rendered and assigns several reasons why it should be reversed.
Opinion.
If the individual members of the plaintiff firm held the legal title to the timber by mesne conveyances from defendant, though the firm had only the equitable title — in other words, if the timber or its value was in reality a partnership asset — and if defendant granted an extension of time within which to remove it, then there should be no question that, if defendant, notwithstanding the extension of time granted by him, took advantage of the failure to record the extension, or of the failure to file it for record, by selling the timber to another, after the expiration of the time originally granted, and appearing of record, but before the time, as extended, had expired, he is liable for the loss occasioned plaintiff by selling the timber the second time. This is so, because the extension, though not recorded, was nevertheless binding on defendant, though, because of the failure to file it for record, it was of no effect as to third persons, and, being binding on him, he was without right, in so far as concerns plaintiff, to ignore it, and treat the timber and the accessory rights granted as having reverted to him, by selling the timber to another.
Defendant, however, contends that, while this suit is brought by the Lake End Lumber Company for the value of the timber and for the loss sustained in constructing the tramway to remove it, yet the evidence does not show that the Lake End Lumber Company was the owner of the timber, or had the equitable title to it, at the timé he (defendant) sold to Gaddis, or had any legal or equitable claim to it at any time, and hence that the judgment rendered should be reversed.
The only evidence ^ in the record, on the question of title, is a deed from defendant to Moore, trustee, and one from Moore, trustee, to W. A. McKennon, John B. Hutchinson, and C. M. Hutchinson, and the extension of time granted by defendant to the persons 'last mentioned. At the time the deed was executed to McKennon and the Hutehinsons, they were members of the Lake *788 End Lumber Company, or soon afterwards organized that firm. However, if tbe Lake End Lumber Company was in existence at the time of the execution of the deed to Mc-Kennon and the Hutchinsons, its name, it may be observed, is not mentioned in the deed, nor is it mentioned in the extension. Moreover, after the execution of the deed to McKennon and the Hutchinsons, .and after the granting of the extension, but before the filing of this suit, McKennon withdrew from the partnership, and the evidence offered (parol), to prove the transfer that followed, shows that he (McKennon) sold his interest in the partnership to John B. and C. M. I-Iutchinson, his former partners, who after-wards conducted the business under the same name as that formerly used. The suit was instituted by the Lake End Lumber Company, a partnership composed of J. B. Hutchinson and C. M. Hutchinson.
In our opinion, while the evidence adduced on the confirmation of the default strongly suggests that the timber, or its value, was a firm asset, yet it does not show it with legal certainty. Had the two Hutchinsons joined in the suit to aid the firm in recovering the damages sued for, then we should feel justified in holding that, as they had thereby treated the timber, or its value, as a partnership asset, we ourselves should so consider it, in so far as their interests are concerned. However, they have not joined in the suit in any manner. Even had they done so, pretermitting all reference to the character of the evidence (parol) to show the transfer of McKennon’s interest in the timber, which, being standing timber, was an immovable, still, in so far as relates to the interest of McKennon therein, we should hardly feel justified in holding that he transferred that particular interest, in the absence of proof showing that, when MeKennon sold, the timber or its value was a partnership asset, since the only evidence as to what McKennon conveyed is that he sold his interest in the firm.
Counsel for plaintiff contend, however, that in the purchase of immovable property by a commercial partnership, as is plaintiff, it is immaterial whether the purchase be made in the name of the partnership or in the name of the partners, and they cite in support of their proposition May v. New Orleans & Carrollton Railroad Co., 44 La. Ann. 444, 10 South. 769, and Thomas v. Scott, 3 Rob. 256. Those cdses support that view, as does the case of Baca v. Ramos, 10 La. 420, 29 Am. Dec. 463. Such is the law when it appears that the purchase was made by the partnership, or for the partnership account. The trouble with plaintiff’s case, however, is that it is not made to appear that the timber and accessory rights were purchased by the partnership, or for the partnership account. It does not follow, because immovable property is found in the names of persons, who are also members of a firm, that the property so found belongs to the firm.
Defendant also contends that the evidence fails to show that plaintiff did not record the extension of time granted to remove the timber. There is no evidence, in the record, showing that the instrument was not filed for record, or recorded. Conceding, therefore, for the moment, that we áre in error in holding that the evidence does hot show that the timber was a partnership asset, still plaintiff is not -entitled to recover because of its failure to prove that the extension was not filed for record, or recorded, before defendant sold to Gaddis. It is true that this ruling calls for proof of a negative allegation, though of one which it was virtually as easy for plaintiff to prove as it was for defendant to prove the contrary. The burden was on plaintiff to make the proof, because the failure to record the instrument, or to file it for record, is of the very substance of plaintiff’s case, for it is manifest *790 that plaintiff cannot recover what it sues for — the value of the timber and the loss occasioned in constructing the tramway — if the extension was filed for record, or recorded, before defendant sold to Gaddis,; for, if it was, then plaintiff was not, by that sale, divested of the timber and of its rights to remove it, and hence did not suffer the alleged loss on account of the sale. In fact, the failure to file the extension for record, or to record it, is essential in order to give rise to plaintiff’s claim; that is, to bring the claim into existence. The fact that the proof required is of a negative allegation does not relieve plaintiff from making the proof. It is said, relative to the burden of proof with respect to negative allegations, in Chamberlayne on the Modern Law of Evidence, vol. 2, § 949;
“The rule assigning the burden of proof is frequently so stated as to lead to an inference that by it is meant that the burden of proof is in accordance with the affirmative in point of form of the proposition submitted to investigation. It is said, for example, that ‘he who affirms must prove’ presumitur pro negante, that no one is obliged to prove a negative, or the party who has the affirmative of any proposition has the burden of proof. This is, in reality, a misapprehension. It is the affirmative of the issue which determines the position of the burden of proof. The affirmative of the issue may require, under the rules of substantive law, proof of negative allegations, by the party having the burden of proof, whether he be plaintiff or defendant. * * * ”
And in Corpus Juris, vol. 22, p. 70, § 15, it is said:
“Whenever, the establishment of an affirmative case requires proof of a material negative allegation, the party who makes such allegation has the burden of proving it, especially where the most appropriate mode of proof is by establishing the affirmative opposite of the allegation. Accordingly such party will be required to make the proof so far as is reasonably possible. * * * ”
See, also, as, supporting the ruling herein made, Barrow v. Robichaux, 14 La. Ann. 207, and Succession of Delachaise v. Maginnis, 44 La. Ann. 1043, 11 South. 715.
For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and that this case be remanded to the lower court to be proceeded with according to law, the plaintiff to pay the costs of appeal.
Rehearing refused by Division A, composed of O’NIELL, C. J., and ROGERS and BRUNOT, JJ.