[No. 7912. *En Banc.* September 15, 1909.]

JONATHAN GIFFORD et al., *Respondents*, v. JAMES D. HORTON, *Appellant.*[1]

NAVIGABLE WATERS—LITTORAL RIGHTS—DEDICATION—SHORE LANDS. The title to shore lands being in the United States, and in the state after the adoption of the constitution, an upland owner, by dedicating a plat covering shore lands on a navigable lake, acquires no title thereto, and none can pass from him by deed or execution sale.

DEDICATION—BOUNDARIES—STREETS BORDERING ON LAKE—FEE— RIGHTS OF PURCHASERS. Where a street in a plat is dedicated along a lake shore to the high water mark, the purchaser of lots abutting on the street acquires the fee to the entire street, subject to the public easement.

PUBLIC LANDS—SHORE LANDS—PREFERENCE RIGHT TO PURCHASE— LOTS ABUTTING ON LAKE FRONT STREET. The purchaser of lots abutting on a street that reaches to high water mark on a lake, has the preference right to purchase the abutting shore lands, by virtue of his ownership of the fee of the entire street.

SAME—STATUTE—CONSTRUCTION. Laws 1897, p. 250, § 45, giving upland owners the preference right to purchase shore lands is a mere gratuity, and is not intended as in lieu of riparian rights.

DEDICATION — RESERVATIONS — CONSTRUCTION — FEE OF STREET — RIGHTS OF PURCHASER—NAVIGABLE WATERS. The fact that the plattors in dedicating a street along the shore line of a lake, the center line of which was above high water mark, excepted and reserved to their own use, all water, riparian, and littoral rights, does not show an intent to reserve the fee to a thread of the street upon sale of lots abutting thereon, thereby saving a preference right to purchase the shore lands; nor does the fact that they believed they owned the lands below high water show an intent to reserve the fee to a thread of the street beyond its center line.

[1]Reported in 103 Pac. 988.

Appeal from a judgment of the superior court for King county, Griffin, J., entered July 30, 1908, upon stipulated facts, upon an appeal from an award of the state board of land commissioners, in a contest over the preference right to purchase shore lands.   Affirmed.

*Louis Henry Legg*, for appellant, contended, among other things, that a grant of land bordering on a road or river ordinarily carries title only to the center thereof. Farnham, Waters & Water Rights, § 724; *Banks v. Ogden*, 2 Wall. 57, 17 L. Ed. 818; *Brisbine v. St. Paul & Sioux City R. Co.*, 23 Minn. 114; *City of Demopolis v. Webb*, 87 Ala. 659, 6 South. 408; *Columbus & W. R. Co. v. Witherow*, 82 Ala. 190, 3 South. 23. The grantee of a lot bordering on a street takes title in the street by presumption of intention only, and according to the intention of the grantor. *Johnson v. Grenell*, 98 N. Y. Supp. 629; *Grant v. Oregon R. & Nav. Co.*, 49 Ore. 324, 90 Pac. 178, 1099; *Haberman v. Baker*, 128 N. Y. 253, 28 N. E. 370; *Dunham v. Williams*, 37 N. Y. 251; *Polson v. Aberdeen*, 44 Wash. 155, 87 Pac. 73; *Watson v. New York*, 73 N. Y. Supp. 1027; *Mott v. Mott*, 68 N. Y. 246. The presumption of intention not to grant beyond the center line of the street, in cases like the case at bar, can be shown by parol evidence. *Watson v. New York, supra; Graham v. Stern*, 168 N. Y. 517, 61 N. E. 891, 85 Am. St. 694; *Polson v. Aberdeen, supra*. The platting of the lots on the opposite side of the street below high water mark, shows an intention not to grant the fee beyond the center line of the street. Farnham, Waters & Water Rights, §. 724; *State ex rel. Bartlett v. Forrest*, 12 Wash. 483, 41 Pac. 194; *Kenyon v. Knipe*, 2 Wash. Ter. 422, 7 Pac. 854; *Grant v. Oregon R. & Nav. Co., supra; Northern Pac. R. Co. v. Scott-Holston Lumber Co.*, 73 Minn. 25, 75 N. W. 737; *Gilbert v. Emerson*, 55 Minn. 254, 56 N. W. 818, 43 Am. St. 502; *Watson v. Peters*, 26 Mich. 508.

*Reeves Aylmore, Jr.* and *J. L. Corrigan,* for respondent Simonsen.

*Frank C. Park* and *H. D. Moore (Geo. B. Cole,* of counsel), for respondent de l'Archerie.

*John P. Hartman,* for intervener.

*Frank S. Bayley* and *H. A. P. Myers, Amici Curiae.*

GOSE, J.—The state, through its proper officers, platted the shore lands upon Lake Union, filed the plat in the office of the commissioner of public lands July 1, 1907, and offered the lands for sale according to law. The appellant, Horton, the respondent Gifford, the respondent Francies R. Day in her own right, and the respondents Smith and Westby, as executors of the will and as devisees of the estate of B. F. Day, deceased, the first two acting severally and the last three acting jointly, claimed the preference right to purchase lots 23, 24, and 25, of block 96, Lake Union shore lands, as platted. The respondent T. de l'Archerie claimed the preference right to purchase lot 23; and the respondent Simonsen claimed the preference right to purchase lots 24 and 25. The several parties filed their applications to purchase according to their respective claims. The several applications were made to the board of state land commissioners, in which the power to sell and convey shore lands is vested by law; and on the 10th day of December, 1907, the board awarded the right to purchase lot 23 to respondent de l'Archerie, and awarded the right to purchase lots 24 and 25 to the respondent Simonsen. The appellant, Horton, and the respondent Gifford appealed from the award to the superior court of King county, and upon stipulation and an order of the court such appeals were consolidated. The case was tried to the court upon a stipulation of facts and certain plats, and the award of the board was affirmed. This appeal was taken by the appellant, Horton, from the judgment affirming the award. Gifford did not appeal.

The facts stipulated in substance are, that on June 22,

1889, one B. F. Day and Francies R. Day, his wife, owned
certain community property which they on that day platted
into lots, blocks, streets and alleys, as B. F. Day's Eldorado
Addition to the city of Seattle, dedicated the streets and al-
leys to the public use, and filed the plat for record; that the
plat was duly accepted by the city; that the dedicators at
that time owned the platted land to the line of ordinary high
water of Lake Union; that on the easterly side of block 15,
Day and wife dedicated a street eighty feet in width, named
Lake Union avenue; that the line of ordinary high water on
the lake is east of the center line of the street; that lots 23,
24, and 25 in block 96 of Lake Union shore lands, as platted
by the state board of land commissioners, are identical with
lots 4, 5, and 6, in block 16, as shown upon the Day plat, and
are directly in front of lots 16, 17, and 20 of block 15, as
shown in the plat of dedication; that on August 24, 1895,
Day and wife, being then the owners, conveyed to one Smith
lots 1 to 26 in block 15, together with the tenements, here-
ditaments, and appurtenances thereunto belonging and ap-
pertaining, with covenants of seizin free from incumbrances,
by a deed of general warranty and by a reference to the plat,
which deed was recorded August 31 following; that re-
spondent de l'Archerie, since September 11, 1906, has been
the owner in fee of lot 16 in block 15, through mesne convey-
ances from Smith; that the respondent Simonsen, since July
1, 1907, has been the owner in fee of lots 17 and 20 of block
15, through mesne conveyances from Smith; that the title
deeds of both of the respondents contain like recitals, grants,
and covenants as the deed from Day and wife to Smith.

It was further stipulated that on the 19th day of October,
1895, a community debt judgment was entered against the
Days, and that B. F. Day's one-half interest in lots 1 to 8
inclusive in block 16 was sold on the 23d day of May, 1901,
on an execution issued upon such judgment; that on the 13th
day of May, 1899, Francies R. Day was adjudged a volun-
tary bankrupt, and on the 28th day of February, 1900, lots

1 to 8 inclusive, block 16, were sold by the trustee in bankruptcy; that by mesne conveyances the respondent Gifford owns whatever title passed to the purchaser at the execution and bankruptcy sales; that from and after the filing of the Day plat, lots 4, 5, and 6, block 16, were assessed annually for county, state, and municipal purposes, and that the taxes were paid by the Days until the year 1892; that the tax upon the lots last described for the year 1892 went delinquent, and a certificate of delinquency was issued to King county, which was foreclosed, and a decree entered thereon on the 29th day of September, 1902, directing a sale of the lots, and that they were sold thereon on the 15th day of November, 1902; that the appellant, Horton, through mesne conveyances, is the owner of whatever title passed at such sale, and was such owner before filing his application to purchase; that taxes have been assessed annually against these lots from 1890 to 1907 inclusive, and paid by the appellant and his grantors.

It was further stipulated that B. F. Day died testate and childless on the 24th day of March, 1904, leaving him surviving his widow, Francies R. Day; that by his last will he devised his estate in equal shares to Everett Smith and Marthine Westby; that the will was admitted to probate on the 4th day of October, 1904; that on October 8, 1907, the widow and Everett Smith, devisee, quitclaimed to appellant lots 23, 24, and 25, block 96, and lots 4, 5, and 6, block 16, together with the riparian, littoral and water front rights appertaining to the upland upon which they abut, with the preference right to purchase them from the state. In the stipulation the regularity of the execution and bankruptcy sales are admitted by the respondents; but they do not admit that they passed any title. The appellant denies that any title passed under either of said sales, and the respondents deny that any title passed to the appellant under either the tax deed or the Day and Everett Smith deed.

We have seen that Day and wife owned all the platted land

to the line of ordinary high water of Lake Union, and that the shore line is east of the center of the avenue as it was dedicated. While the dedicators platted all the land they owned, they did not own all the land they platted. In front of lots 16, 17, and 20, block 15, and east of the avenue, they platted shore lands and designated them as lots 4, 5, and 6, block 16, which we have seen are identical with lots 23, 24, and 25, block 96, Lake Union shore lands.

The appellant assigns numerous errors, but they all revolve about his one claim that he is the owner of the upland, and therefore entitled to the preference right to purchase the shore lands upon which they front. The title to the shore lands on Lake Union at the time the plat of dedication was filed, it being navigable, was in the United States, and since the adoption of the constitution in November, 1889, the title has been in the state. It follows, therefore, that the platting and the assertion of title by Day thereto was of no legal force, and that the tax sale under which the appellant claims did not invest him with any title, nor did the execution or bankruptcy sale convey any title to the respondent Gifford. *Seattle & Montana R. Co. v. Carraher*, 21 Wash. 491, 58 Pac. 570; *Eisenbach v. Hatfield*, 2 Wash. 236, 26 Pac. 539, 12 L. R. A. 632; *Brace & Hergert Mill Co. v. State*, 49 Wash. 326, 95 Pac. 278; *Grays Harbor Boom Co. v. Lownsdale, ante* p. 83, 102 Pac. 1041; *Blakslee Mfg. Co. v. Blakslee's Sons Iron-Works*, 129 N. Y. 155, 29 N. E. 2.

The plat of dedication executed by Day and wife recited: "That we have this day platted the same as B. F. Day's Eldorado, and we do hereby dedicate to the use of the public forever all the streets and drives shown on said plat, excepting and reserving, however, all the water, riparian, and littoral rights for our own use and benefit." The appellant urges that the exception clause in the dedication, together with the platting of the shore lands lying east of the street, indicate an intention upon the part of Day and wife to reserve the fee to the east half of Lake avenue, that

through his deed from the wife and devisee he has succeeded to that right, that he is the owner of a thread or narrow strip of upland lying between the center of the avenue and the shore line, wholly within the street, and that he is therefore the upland owner, under the provisions of Laws 1897, pages 250, 252, §§ 45, 46, and entitled to the preference right to purchase the shore lands.

It is contended by the respondents that, when Day and wife conveyed the upland fronting on the avenue, the avenue being the boundary of their land, by a deed of general warranty without reservation, the conveyance carried with it the title to the fee in the entire street, subject only to an easement in the public, and that as owners of lots 16, 17, and 20, in block 15, which abut on the street, they are the upland owners and entitled to the preference right to purchase the shore lands lying in front of their lots.

In the absence of a governing statute or a reservation in the grant, the general rule is that the owner of land on each side of a highway or street owns the fee to the center of the road or street, subject only to the easement in th public. This rule is too well settled to require the citation of authority. Proceeding from the premise that the reservation in the plat of dedication will not be extended by an equitable construction (*Strunk v. Pritchett*, 27 Ind. App. 582, 61 N. E. 973; Elliott, Roads & Streets [2d ed.], par. 119) we will try to arrive at the intention of the Days by an examination of the language employed, and the surrounding circumstances. They reserved not the fee in whole or any part of the street, which they could have done by apt words in the dedication, or by a reservation in the deed to Smith, but they reserved "all riparian and littoral rights." We have seen that in this state they had no such rights. In addition to the reservation clause, they platted the shore lands the title to which, as we have seen, was then in the United States. We are, in effect, called upon to declare that the reservation in, and an assertion of title to, that which they did not own in-

dicated an intention on their part to reserve a different property which they did own. The true rule is that, under the admitted facts, the grantee of land fronting upon the street takes the fee to the entire street, unless the terms or circumstances of the grant indicate a limitation of its extent to the center of the street. The applicable part of Laws 1897, page 250, § 45, is as follows:

"The owner or owners of lands abutting or fronting upon tide or shore lands of the first class shall have the right for sixty (60) days following the filing of the final appraisal of the tide and shore lands with the commissioner of public lands to apply for the purchase of all or any part of the tide or shore lands in front of the lands so owned."

The appellant urges that this right is given in lieu of riparian rights. There is nothing in the language of the statute indicating such an intention. So far as the statute discloses, it is a mere gratuity given to the upland owner. In commenting on the rule of construction where the owner lays out a street along the margin of his land, in *Taylor v. Armstrong*, 24 Ark. 102, at page 107, the court said:

"But if a highway be laid off entirely upon the land of A, running along the margin of his tract, and he afterwards conveys the land, the fee in the whole of the soil of the highway vests in his grantee. . . . The same rules are applicable to streets in towns and cities."

The same rule is succinctly stated in the syllabi to *Succession of Delachaise v. Maginnis*, 44 La. Ann. 1043, 11 South. 715, in the following words:

"A party who sells the entire estate owned by him up to the line of a public road, or street bordering the river, and beyond which no property susceptible of private ownership exists at date of sale, retains no estate to which the accessory right to future alluvion could attach."

And:

"The intervention of a public road or street does not prevent the owner of the estate adjacent thereto from being considered as the front or riparian proprietor, when nothing

susceptible of private ownership exists between the road or
street and the river."

Treating this question in *Haberman v. Baker*, 128 N. Y.
253, 28 N. E. 370, 13 L. R. A. 611, at page 259, it is said:

"Where the highway has been, as in the present case,
wholly made from and upon the margin of the grantor's land,
his subsequent grant of the adjoining land should be deemed
to comprehend the fee in the whole road-bed; upon the same
principle that exists for giving the fee to the center in the
other cases. The grantor should be presumed to have in-
tended by his conveyance the full investiture of the grantee
with all appurtenant property rights in the highway."

In *In re Robbins*, 34 Minn. 99, 24 N. W. 356, 57 Am. Rep.
40, it was held that, where a street is laid out wholly on the
owner's own land and on the margin of his tract so that he
owns nothing beyond, the whole of the street opposite a lot
bounded on the street passes to the grantee of such lot. In
*Johnson v. Grenell*, 188 N. Y. 407, 81 N. E. 161, at page
410, in commenting on the legal effect of a grant of a lot
upon a street along the boundary of a grantor's property,
the court said:

"The grantees of Mrs. Grenell, in this case, had the right
to rely upon the application of the rule that a grantor will
not be supposed to have reserved the title to the road bound-
ing a grant of lands, if its control ceased to be of importance
to him by reason of his having parted with all of his interest
in the lands adjoining it."

The court further stated that the control of the street had
ceased to be of importance to the grantor after she had con-
veyed the adjoining land, but that it was important and es-
sential to the grantee for reasons connected with the full
enjoyment of the property. The question also received con-
sideration in *Bissell v. New York Cent. R. Co.*, 23 N. Y. 61,
64, where it is said:

"The idea of an intention in a grantor to withhold his in-
terest in a highway to the middle of the street, after parting

with all his right and title to the adjoining land ought never
to be presumed; and all the cases hold that, in such a case,
it requires some declaration of such an intention in the deed
to sustain such an inference."

In *Blakslee Mfg. Co. v. Blakslee's Sons Iron-Works, supra*,
it was held that a party claiming under a reservation iden-
tical in meaning with the one in controversy was not an up-
land owner. *Grant v. Oregon R. & Nav. Co.*, 49 Ore. 324,
90 Pac. 178, 1099, cited by the appellant, holds that ordi-
narily a conveyance of land abutting upon the shore carries
with it to the grantee therein all rights incident to the shore
land; but, when the conveyance shows the intention of the
grantor to reserve the riparian rights, they will not pass to
the grantee. In *Mott v. Mott*, 68 N. Y. 246, also cited by the
appellant, the land had been conveyed by description by
metes and bounds bordering a lane, and the deed also granted
the right to use the lane, and the court concluded that the
fee to the lane did not pass to the grantee. Other cases cited
by appellant announce the rule that, where the dedicator
owns to the low water line and sells property abutting on a
street, which street is bordered on one side by a navigable
river, the purchaser takes title to the center of the street
only. Such is *City of Demopolis v. Webb*, 87 Ala. 659, 6
South. 408. *Gilbert v. Eldridge*, 47 Minn. 210, 49 N. W.
679, 13 L. R. A. 411, holds that the platting and conveyance
of land in the water beyond the shore line disassociated the
riparian rights from the upland, and transferred them to the
purchaser of the submerged land. This doctrine, however,
recognizes the local law which made the line of low water
the boundary; whereas, we have seen that in this state the
line of high water is the boundary.

We do not think the fact that the Days believed they
owned the shore lands and riparian rights justifies a hold-
ing that they intended to reserve the fee to a bare thread of
the street. Having conveyed the upland to the street which
marked the boundary of their land, the presumption is that

the grantee was invested with the fee to the entire street, and we do not think that the surrounding circumstances overthrow this presumption. It follows from what we have said that respondents are the upland owners, and the decree will be affirmed.

RUDKIN, C. J., FULLERTON, PARKER, MOUNT, and CROW, JJ., concur.