[No. 8398. Department Two. March 28, 1910.]

JOHN B. SHORETT et al., Appellants v. CARL SIGNOR, Respondent.[1]

PUBLIC LANDS—SHORE LANDS—PREFERENCE RIGHT TO PURCHASE. The grantee of lots below the line of ordinary high water on a navigable lake acquires no title thereto and has no preference right to purchase shore lands as an owner of abutting upland.

SAME—STATUTES—ABUTTING OWNERS. Under Rem. & Bal. Code, § 6754, the bona fide purchaser of lots below high water mark, from the owner of the uplands, or one claiming through such bona fide purchaser, is entitled to the preference right to purchase the shore lands, regardless of the present ownership of the abutting uplands.

SAME—PURCHASE FROM STATE—PROCEEDINGS — APPEAL — AMENDMENT OF APPLICATION. Under Rem. & Bal. Code, § 6620, relating to appeals to the superior court on applications to purchase shore lands, it is proper to allow an application, based upon the ownership of lots below high water mark, to be amended so as to show that the

[1]Reported in 107 Pac. 1033.

applicant had acquired the record title thereto through a *bona fide* purchaser from the owner of the upland, Rem. & Bal. Code, § 6754, providing that such *bona fide* purchaser or persons claiming under him shall have the preference right to purchase the shore lands.

HUSBAND AND WIFE—CONVEYANCES BETWEEN—RIGHTS CONVEYED— SHORE LANDS—PREFERENCE RIGHT TO PURCHASE. A deed from one member of the community to another has the effect to make the land the separate property of the grantee, and this applies to a preference right to purchase shore lands through the conveyance of lots below high water mark, where the community owned the upland, under Rem. & Bal. Code, § 6754, providing that a *bona fide* purchase of such lots from the upland owner gives the purchaser such preference right.

HUSBAND AND WIFE — CONVEYANCE BETWEEN—BONA FIDES—PRESUMPTION. A deed from one spouse to another, reciting a consideration of $10,000, which is not attacked, is presumed to be made to a *bona fide* purchaser for value.

Appeal from a judgment of the superior court for. King county, Morris, J., entered January 16, 1909, in favor of the defendant, upon stipulated facts, in an action to determine the preference rights to purchase shore lands. Affirmed.

*Shorett & Shorett, Harry D. Moore, Humphries & Cole,* and *Wm. L. Waters,* for appellants.

*H. A. P. Myers,* for respondent.

CROW, J.—The appellants, John B. Shorett, Levi Webb, Harry D. Moore, J. M. Reid, Abby Reid, his wife, and Charles H. Brunzel, and the respondent, Carl Signor, severally claiming to be upland owners, made applications to the board of state land commissioners to purchase separate lots and parts of lots in block 97 of Lake Union shore lands in the city of Seattle. The preference right to purchase lots 1, 2, 3, and 4 of block 97, is here involved. The board of state land commissioners awarded the north 25 feet of lot 2 to Signor, the next 25 feet of lot 2 to Shorett and wife, the south 50 feet of lot 2 and all of lot 3 to Brunzel, and all of lot 4 to Reid and wife. From these awards Carl Signor appealed to the superior court of King county. When the cause came on for

trial *de novo* in the superior court, the following facts were, upon written stipulation, admitted to be true:

"(2) That on, to wit, the 22d day of June, 1889, B. F. Day and Frances R. Day, his wife, were the owners and in possession of certain real estate in King county, state of Washington, having acquired the same by purchase after marriage, to which said property they on said date made, executed and filed the plat thereof, platting the same into lots, blocks, streets and alleys, a copy of which plat, together with the dedication, description and acknowledgment endorsed thereon, being filed herewith and marked appellants' Exhibit 'A,' being known as B. F. Day's Eldorado Addition to the City of Seattle. That said plat was duly and regularly accepted by the properly constituted authorities. That said B. F. Day and his wife at the date of making said plat were the owners and in possession of all the lands shown therein to the line of ordinary high water of Lake Union. That on the westerly side of block 19 of said plat said grantors dedicated a street eighty (80) feet in width named Lake Avenue. That the government meander line along the western side of said block 19 is above the line of high water. That the line of ordinary high water of Lake Union is east of the center line of said Lake Avenue. That lots 1, 2, and 3, in block 19, as shown upon said plat, are identical with lots 2, 3, and 4 in block 97, Lake Union Shore Lands. That the line of ordinary high water of Lake Union is as shown by the official plat of Lake Union Shore Lands, which is hereto attached and marked Exhibit 'B.'

"(3) That on the 14th day of January, 1890, said B. F. Day made, executed and delivered to Frances R. Day, his wife, a deed to said block 19, Day's Eldorado Addition, together with the appurtenances which deed is of record in Book 91 of Deeds, page 393. That on November 24, 1894, all of said block 19 was mortgaged in due and regular form by said B. F. Day and wife to one Martha A. Miller. That thereafter said mortgage was duly and regularly foreclosed and a sheriff's deed issued in said foreclosure proceedings to said Martha A. Miller. That the above named Carl Signor is and has been since the 4th day of May, 1903, the owner of whatever interest said B. F. Day and wife owned in said property on November 24, 1894, and in possession of said lots 1, 2, and 3, block 19, B. F. Day's Eldorado Addition,

by and through a conveyance from said Martha A. Miller.

"(4)  That on the 18th day of January, 1890, said B. F. Day and Frances R. Day, his wife, made, executed and delivered to one Bruce, their deed of conveyance to lot 1, block 1 of said addition, by reference to said plat, together with tenements, hereditaments and appurtenances, with covenants of warranty.  That said respondents Shorett and Webb are now and have been since October 2, 1906, the owners of the north half of said lot 1, and the respondent Charles H. Brunzel is now and has been since September 2, 1902, the owner of the south half of said lot 1, block 1, both through mesne conveyances from said Bruce.

"(5)  That on the 28th day of August, 1890, said B. F. Day and Frances R. Day, his wife, made, executed and delivered to one Cooney their deed of conveyance to lot 2, block 1, of said addition, by reference to said plat, together with tenements, hereditaments and appurtenances, with covenants of warranty.  That said respondents J. M. Reid and Abby Reid, his wife, are now and have been since March 10, 1903, the owners of said lot 2, block 1, through mesne conveyances from said Cooney.

"(6)  That on the 11th day of November, 1890, said B. F. Day and Frances R. Day, his wife, made, executed and delivered to one William Moran, their deed of conveyance to lots 1 and 2, in block 8, of said addition, by reference to said plat, together with tenements, hereditaments and appurtenances, with covenants of warranty.  The said respondent H. D. Moore is now and has been since the 26th day of August, A. D. 1906, the owner of said lots 1 and 2, in block 8, through a deed from said William Moran and wife, which deed is recorded in Book 481 of Deeds, at page 231; and which deed recited that grantors convey the riparian and littoral rights, including the preference right to purchase the lots adjacent thereto when the same are platted by the state of Washington.

"(7)  That from and after the filing of the plat of B. F. Day's Eldorado Addition, lots 1, 2 and 3 of said block 19, were annually assessed for county, state and municipal purposes, and all of said taxes were paid by said B. F. Day and wife, and their grantees of said lots and none of said taxes were ever assessed to, or paid by any of the owners of any of lots 1, 2, and 3, in block 1, or lots 1 and 2, in block 8, B. F. Day's Eldorado Addition.

"(8)  That shortly after said Signor purchased said lots 1, 2 and 3, block 19, he built a residence and store upon said lot 2, with concrete foundation, and thereafter resided and still resides thereon; and also constructed a blacksmith shop upon said lot 4.

"(9)  That the upland along the shore adjoining said Day's Eldorado Addition raises quickly and rapidly and it was impossible unless considerable expense was incurred in grading, etc., to lay off Lake Avenue eighty (80) feet wide without encroaching somewhat upon the waters of the lake, on account of the adjoining high land.

"Said H. D. Moore does not consent to any of paragraph three (3) down to and including the figures 393 in the 4th line of said paragraph."

The plat of B. F. Day's Eldorado addition shows that the lots in blocks 1 and 8 are separated from Lake Union, by Lake (now Westlake) avenue immediately to the east, and that lots 1, 2 and 3, in block 19, immediately to the east of Westlake avenue, claimed by Signor, are all, or practically all, below the line of ordinary high water.  Lots 2, 3 and 4 of block 97, of the shore lands platted by the state, and now in dispute, are substantially the same as lots 1, 2 and 3, in block 19, of B. F. Day's Eldorado addition, to which Signor holds the record title, and which are frequently designated as water lots in the briefs; that a small portion of these so-called water lots consists of upland lying east of Westlake avenue.  This contention is disputed by the other applicants, who claim the lots are entirely below the line of ordinary high water, and that Signor has no interest therein or in the fee title to the east half of Westlake avenue.  On trial findings were made in favor of Signor and a decree was entered, by which it was adjudged that he had the preference right to purchase the shore lands from the state.  From that judgment, the other applicants have appealed.

If all the lots in block 19, platted by B. F. Day, which the respondent, Signor, now claims, are in fact located below the line of ordinary high water, then under the rule announced in *Gifford v. Horton*, 54 Wash. 595, 103 Pac. 988, Signor

would have no legal title thereto or to the east half of West-lake avenue, nor would he, as an upland owner, be entitled to any preference right to purchase the shore lands. In his original application and statement of facts, filed with the board of state land commissioners, the respondent, Signor, predicated his alleged preference right to purchase upon his claim of title to the lots in block 19, and upon the fee title claimed by him in and to the east half of Westlake avenue. In the superior court he offered in evidence a certified copy of a recorded deed, for block 19 and other property, dated January 14, 1890, from B. F. Day to Frances R. Day, his wife, and was granted permission to amend his application by adding thereto the following allegation:

"Said applicant, if he is not the upland owner, is entitled to purchase said shore lands under the provisions of Sec. 2176 of Ballinger's Code; that is on the 14th day of January, 1890, the owner of the uplands, abutting upon said shore lands, attempted to convey and did convey said shore lands by deed of record in Book 91 of Deeds, page 393, to Frances R. Day, who was a *bona fide* purchaser thereof, and under whom this applicant claims the preference right of purchase."

The appellants now contend that the trial court erred in allowing this amendment. Bal. Code, § 2176 (Rem. & Bal. Code, § 6754), mentioned in the amendment, reads as follows:

"When the abutting upland owner has attempted to convey by deed to a *bona fide* purchaser any portion of the tide or shore lands in front of such uplands, or littoral rights therein, such right of purchase herein given to the upland owner shall be construed to belong to such purchaser, or to any person, association or corporation claiming by, through or under such purchaser, to the extent of the tract or right so conveyed."

If Signor has the record title, so attempted to be conveyed by the owner of the uplands to a *bona fide* purchaser, he is entitled to the preference right to purchase, and under section 5, chapter 62, Laws of 1901, page 99 (Rem. & Bal. Code, § 6620), referring to appeals from the board of state land

commissioners, we hold that the amendment pleading such preference right was properly allowed.

The respondent contends that, while the community consisting of B. F. Day and Frances R. Day, his wife, still owned the upland, the deed of January 14, 1890, which he introduced in evidence, was executed and delivered; that the record title to the lots in block 19, now the shore land lots, passed to Frances R. Day as her separate property; that respondent has deraigned title from her, and that by virtue thereof he acquired the preference right to purchase the shore lands without regard to the present ownership of the uplands. The deed conveying the water lots in block 19 was executed and delivered to Frances R. Day, by B. F. Day, her husband, while the community consisting of himself and wife still owned the upland, and prior to the execution and delivery of the deeds of Day and wife under which the appellants now deraign their respective titles to the uplands. Appellants, however, contend that, at the date of the deed from Day to his wife for the lots in block 19, he, the grantor, did not own the uplands; that they were owned by the community; that Day's deed in no manner aids the respondent, and that Frances R. Day, the grantee, was not a *bona fide* purchaser within the meaning of the statute.

The legal effect of a deed from one member of a marital community to the other is to convey the community property and title to the spouse who is the vendee, so that it becomes, or is converted into, his or her separate property, in which the community as such ceases to have any further title or interest. Such a conveyance is authorized by Rem. & Bal. Code, § 8766. The deed, although executed by one spouse only, is in law a conveyance by the community to the other spouse who, being the vendee, thereafter holds the realty as his or her separate estate. After the deed from B. F. Day to his wife was made and delivered, the community still held and owned the upland, while the wife held the record title to the lots so attempted to be conveyed as and for her separate

estate.   The community is an entity, separate and distinct
from either spouse.   Title to community property, held in
the name of either spouse for the benefit of the community,
is clearly distinguished from the title to separate property
held by one spouse for his or her benefit, discharged from
any claim or right of the community as such.   Had the com-
munity, as owner of the uplands, attempted to convey the lots
in block 19 to some third party, a *bona fide* purchaser, then
under Rem. & Bal. Code, § 6754, *supra*, such third party
would undoubtedly have acquired the preference right to pur-
chase the shore lands.   In other words, the preference right
would pass from the community owner of the uplands to such
*bona fide* purchaser and his grantees.   There is no reason why
it would not in like manner pass from the community owner to
the spouse acquiring it as separate property, and thereafter
to his or her grantee.   If not, there would then be in this state
at least one species of community property, involving a
valuable right, which, under § 8766, *supra*, could not be con-
veyed to either spouse and become separate property.

Appellants further contend that the deed from B. F. Day
to his wife was not an attempt to convey to a *bona fide* pur-
chaser.   It recites a consideration of $10,000, which has not
been questioned or attacked.   In the absence of evidence
showing fraud, the deed is presumed to have been made in
good faith, for a valid consideration, and to a *bona fide*
purchaser.

At the time of the execution of this deed, the Days evi-
dently believed the community owned the water lots in block
19.   This being true, and a valuable consideration which
appellants do not question appearing in the deed, we are
compelled to hold that the community, as owner of the upland,
attempted in good faith to convey the water lots, now the
shore land lots, to Frances R. Day as a *bona fide* purchaser
for value, and that under § 6754, *supra*, the respondent,
Signor, who has deraigned title from her, is entitled to the

preference right to purchase the shore lands without regard to the present ownership of the abutting uplands.

The judgment is affirmed.

RUDKIN, C. J., MOUNT, PARKER, and DUNBAR, JJ., concur.