[No. 8883.    Department Two.    December 13, 1910.]

JOHN B. CAMERON, *Respondent*, v. E. C. BURKE *et al.*,
*Appellants.*[1]

BOUNDARIES—PLATS—GRANTS—DETERMINATION OF LINES.  Where a plat fails to give the east line of certain platted lots, or the dimensions of the side lines, the intention of the plattors is to be given effect by applying the map scale to the side lines, ascertaining the length of the three sides given, and determining therefrom the other missing line.

DEDICATION—INTENT—PLATS — BOUNDARIES.  A plat bordering on water is not to be construed as intended to cover only uplands, where it is evident that the plattors assumed to own and platted part of the shore lands.

COVENANTS—QUIET ENJOYMENT—DAMAGES—MEASURE.  Where lots in a plat included shore lands, which were afterwards included in the state plat of the shore lands, the measure of damages for breach of covenant of quiet enjoyment in the deed of the lots is the proportion of the purchase price paid to the state which the area overlapped by the state plat bore to the total area of the lots.

APPEAL — RECORD — FINDINGS — REVIEW.  Upon a question as to breach of covenant in a deed of certain lots, the contention that part of the lots are claimed by a city as a street cannot be considered on appeal, in the absence of the evidence on the subject, or any finding thereon by the trial judge.

Appeal from a judgment of the superior court for King county, Tallman, J., entered March 10, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action for breach of covenant. Reversed.

*Robert F. Booth, Farrell, Kane & Stratton,* and *Reynolds, Ballinger & Hutson,* for appellants.

*John B. Denny, H. A. Martin,* and *A. A. Booth,* for respondent.

MORRIS, J.—Respondent brought this action to recover for breach of a covenant of quiet enjoyment, contained in a

[1]Reported in 112 Pac. 252.

deed from appellants to himself. The property described in the deed is "lots 1, 2, and 3 in block 18, B. F. Day's Eldorado addition to the city of Seattle." After the delivery of the deed, and the enjoyment of possession thereunder by respondent, the state, through its board of state land commissioners, platted Lake Union shore lands, lots 1, 2 and 3, block 96, of which plat overlaps a portion of the area claimed by respondent under his deed from appellants, which gave respondent the option of purchasing from the state or suffering an eviction. The portion of lots 1, 2 and 3, block 18, Eldorado addition, not affected by the plat of Lake Union shore lands, was an irregularly shaped tract whose north line would be 94 feet, the east line 158 feet (approximately), the south line 60 feet, and the original frontage on the west line of 186 feet. The portion covered by the plat of Lake Union shore lands depends upon the construction to be given the east or water line of lots 1, 2 and 3, in Eldorado addition. The chief value of the lots in this block of Eldorado addition is their water frontage on the lake, and respondent, for the purpose of preserving this frontage, purchased lots 1, 2 and 3, in block 96, Lake Union shore lands, from the state, paying therefor $1,859.13. The court below, being of the opinion that the lots so purchased from the state were within the description called for by appellants' deed to respondent, and that such assertion of paramount title by the state was an eviction, awarded judgment accordingly in said sum, and appellants, alleging error in such judgment, appeal.

Lots 1, 2 and 3, block 96, Lake Union shore lands, cover an area irregular in shape and approximately 194 feet on the north line, 95 feet on the east, 195 feet on the south, and 158 feet on the west or base line; while the west or base line of lots 1, 2 and 3, block 18, Eldorado, is approximately 94 feet farther west on the north line and 60 feet farther west on the south line, with a west or base line of 186 feet. As originally platted, these lots in block 18 are all in the water, except a

triangular piece of upland about 40 feet in length on the north line of lot 1, and running thence southwesterly to the base line, including a small portion in the northwest corner of lot 2. The recorded plat of Eldorado addition shows these lots in block 18 as having north, south, and west lines only, the east line being somewhere out in the lake, the length of the north and south boundary lines not being given on the plat. The plat, however, says the "Dimensions of all lots, blocks, streets and drives are as shown on the plat," and the plat is drawn upon a given scale, so that by applying the scale, it is possible to ascertain the length of any given line. The lots in block 18 having then no east end lines, the question naturally presents itself, what area is described in these lots and what passed by the deed. This must first be ascertained before it can be determined from what portion of his grant respondent has been evicted.

The first rule to be observed in ascertaining the true construction of the grant to respondent, inasmuch as the description of the lots follows the description of the plat of Eldorado addition, is to ascertain the intention of the dedicator as expressed in the plat, and in doing so, to give effect to the entire plat. Following this rule and applying the scale to the northerly and southerly boundary lines of lots 1, 2 and 3, in block 18, as given on the plat, we find the length of the northerly line of lot 1 to be 127 feet, the length of the line common to lots 1 and 2 is 120 feet, the next line common to lots 2 and 3 is 112 feet, and the southerly boundary line of lot 3 is 114 feet. The fact that these lines are of irregular length is immaterial. It is the duty of the court to give effect to the plat, and if by using the description of the plat, we can give length to these lines, we should do so. The law will not disregard the lines so ascertained, because they may be of uneven length, as we cannot assume that in platting these lots it was the intention of the dedicator to give even lengths to all his side lines, although it may be difficult to imagine a good reason why it should not have been done. Having as-

certained the length of the side lines, it is possible to give the lots an easterly end line by connecting the side lines. This brings us within a well known rule of law in the construction of deeds. Where three sides of a grant are given and the fourth omitted, the missing line should be ascertained by connecting the outer termini of the adjoining lines with a straight line. *Laub v. Buckmiller*, 17 N. Y. 620; *Dygert v. Pletts*, 25 Wend. 402; *Woodward v. Nims*, 130 Mass. 70; *Johnson v. Williams*, 22 N. Y. Supp. 247.

Applying this rule, it is possible to sustain the deed, thus bringing us within an equally known rule, that a deed will be sustained when, from the entire description, it is possible to ascertain and identify the land intended to be conveyed. Devlin, Deeds, § 1012. Appellants, while admitting the above rule and suggesting the possibility of its application in this case, suggest that the deed is void for want of definiteness of description, and that it is impossible to ascertain the grantor's intention as to the eastern boundary of the lots, no length being given to the side lines, and the lots thus have no area. What we have said answers this contention.

It is next suggested that the area intended is such upland as might lie within the lines. The only upland within these lines is that small portion in lots 1 and 2; the whole of lot 3 and practically the whole of lot 2 lying in the water. Such description therefore would not be necessary if it was only intended to pass the upland, and it is evident additional area was intended. Next, that in the absence of a given length to the side lines, it is impossible to ascertain whether it was intended to claim to the center of the lake or to the outer harbor line. The outer harbor line had not been established at the time of the making of this plat, nor was there anything to indicate (it being prior to the adoption of our constitution) that a harbor line ever would be established in Lake Union at the time of the dedication of this plat, June 22, 1889. It is therefore evident, as we held in construing this same plat in *Gifford v. Horton*, 54 Wash. 595, 103 Pac. 988, and *Shorett*

*v. Signor*, 58 Wash. 89, 107 Pac. 1033, that, while the Days, the dedicators of this plat of Eldorado addition, did not own all the land they platted, they filed the plat and laid out the lots under the assumption that they owned the shore lands, and by virtue of their ownership of the uplands bordering on the lake, had and could convey title to the water lots. They did claim an area covered by the water lots, and as it is possible from the plat to ascertain what that claimed area was, and to thus give effect to the missing end lines, it is the duty of the court to do so.

Having established the area covered by respondent's deed, the next inquiry is, to what extent has he been evicted by the assertion of paramount title in the state. Taking the north-erly line of lot 1 of block 18 as we have established it as indicated on the plat, to be 127 feet, and the southerly line of lot 3 to be 114 feet, and referring again to that portion of the area of these lots not covered by the plat of block 96, a tract 94 feet on the northerly side and 60 feet on its southerly side, we have remaining an area 33 feet on its northerly side, 54 feet on its southerly side, having the west or base line of block 96, a line approximately 158 feet in length, for its westerly boundary, and the established missing line approximately 146 feet in length as its eastern boundary; all of which area is included within block 96, and represents that portion of block 96 which overlaps, or is overlapped by, lots 1, 2 and 3, block 18, as we have established them. This is the area, according to our holding, from which respondent has been evicted by the state. The amount paid by respondent to the state for all of lots 1, 2 and 3, block 96, was $1,859.13, and the measure of his damage for such eviction is that amount the ratio of which is to the amount paid by him as the area from which he was evicted is to the whole area of lots 1, 2 and 3, block 96, which is the sum of $376.87, which amount we hold represents the true measure of respondent's damage. *West Coast Mfg. & Inv. Co. v. West Coast Imp. Co.*, 31 Wash. 610, 72 Pac. 455.

The respondent sets forth in his complaint that "the city of Seattle, relying upon the plat of the shore lands and upon the dedication of said premises by the state of Washington as a shore land street, is now proceeding to use the same premises as a public street." And the statement of facts shows the admission of a summons and complaint in what is referred to as the "Westlake Avenue Boulevard condemnation suit," marked plaintiff's Exhibit B. There is, however, no such exhibit in the record here. Nor did the court make any finding in this regard. We are, therefore, unable to determine what portion of the area in question here is sought by the city for a street, or what effect, if any, such a street would have on that portion of block 18 not included in block 96, or that portion included in the overlapping of the two blocks. We are therefore unable to determine what effect, if any, such condemnation proceedings have on the questions submitted by this record.

The judgment of the court below is reversed, and the cause remanded with instructions to enter a judgment for the plaintiff in the sum of $376.87, with interest from the time of respondent's payment to the state, which time we are from the record unable to ascertain.

RUDKIN, C. J., CHADWICK, DUNBAR, and CROW, JJ., concur.