JOHN L. LAMPREY AND ANOTHER v. AMERICAN HOIST & DERRICK COMPANY.[1]

April 9, 1936.

No. 30,684.

[1]Reported in 266 N. W. 434.

*Kerr & O'Neill,* for appellants.
*Patrick J. Ryan,* for respondent.

I. M. OLSEN, JUSTICE.

Plaintiffs appeal from the judgment. The action was brought to vacate a decree of registration of title in defendant to the real estate here involved. The decree was entered in the district court of Ramsey county January 25, 1930. The present action was tried to the court and findings of fact and conclusions of law in favor of defendant made July 2, 1934. There followed a motion for amended findings of fact and conclusions of law, which motion was denied. Judgment in defendant's favor was entered December 29, 1934, from which this appeal was taken.

The property involved is located in West St. Paul. Its northerly boundary is the Mississippi River. The land was platted in 1856 by Louis Robert and Charles Bazil, the then owners thereof, as "Bazil & Robert's Addition to West St. Paul." The northerly boundary of this addition is shown on the original plat as the Mississippi River. The shore line or river boundary is shown on the plat by a slightly undulating line, indicating slight indentations or curvatures in the riverbank. Adjoining the river boundary on the south is a strip of land some 60 to 65 feet wide, dedicated by the plat as Water street. No land is shown on the plat northerly of Water street or between Water street and the river. Adjoining and fronting on Water street on the south are blocks 1 to 4, inclusive, of Bazil & Robert's Addition. Lots 1 to 5, inclusive, in block 1, are the lots in that block fronting on Water street. The city council vacated this street adjoining blocks 1 and 2 of said addition. The sketch map here set out gives an outline of the situation of the premises as shown on the original plat.

There is no direct evidence as to the condition of the river, the stage of the water therein, or the actual river boundary at the

time the plat was made. At the present time there is a stretch of land in front of lots 1 to 5, inclusive, of block 1, extending northerly from what is indicated on the plat as Water street for a distance of some 170 to 190 feet. Part of this land is swampy and covered by pools of water. Some of it has been made by filling in by defendant or the prior occupant, the Waterous Engine Works Company. There is evidence that there has been a gradual filling in of the ground beyond the old river bank, creating a new bank out at the edge of this stretch of ground.

Bazil and Robert sold and conveyed to divers persons all the lots in block 1 of their addition to West St. Paul during the year 1856. Neither they nor their heirs have had any title or interest in any of these lots since that time. The plaintiffs, Jeanne Lamprey, now deceased and represented by John L. Lamprey as administrator of her estate, and Lillie M. DeMenil, are the heirs of Louis Robert, deceased. As such they claim title to an undivided one-half of the vacated northerly one-half of what was Water street, and to an undivided one-half of the stretch of land now existing northerly of what was Water street, in front of block 1 of this addition, extending out some 170 to 190 feet, as hereinbefore described.

In 1883 the city of St. Paul acquired title to approximately the northerly half of lots 1 to 5, inclusive, of block 1, of this addition. The city apparently intended or attempted to establish a public levee along the river across these lots, extending through Bazil & Robert's Addition. The southerly line of this purchase is referred to as the "levee line." On September 9, 1924, the city, for a consideration of $15,512.50, sold and conveyed to the West Side Realty Company, a corporation, all those parts of lots 1 to 5, inclusive, in block 1, lying northwesterly of a line drawn parallel with and 60 feet northwesterly from the levee line; also the vacated Water street in front of said lots, and all land then existing between what had been Water street and the Mississippi River. The description is by metes and bounds, and the Mississippi River is the northerly boundary of the tract conveyed. The conveyance recites that it is the intention to convey "all accretions and increment thereto * * *

together with all riparian rights." There is excepted from the conveyance a strip of land along the westerly line of lot 5, and a small triangular piece apparently for an abutment of the Robert street bridge. This conveyance includes the land described in the decree registering title hereinbefore mentioned, and the description covers the land claimed by plaintiffs in this action.

On December 1, 1928, the West Side Realty Company sold and conveyed to the defendant corporation the same property, bounded on the northerly side by the Mississippi River. The conveyance contains the same recitals that the intention is to convey all accretions and increment thereto, together with all riparian rights.

The grounds presented by plaintiffs for asking that the decree of registration be set aside are plaintiff's claims that, notwithstanding the platting of the land in the manner hereinbefore stated and the conveyance by Bazil and Robert of all the lots in block 1 of the platted land in 1856, Bazil and Robert retained the fee title in the northerly half of what was dedicated as Water street and title to any land then existing northerly of said street, and to any land since added thereto by accretion or reliction by change or recession of the river current or flow, and that, not having been made parties to the proceeding to register title, they are not bound thereby and are entitled to have the decree vacated. The further claim is that, in any event, by the vacation of Water street, the ownership of the northerly one-half thereof reverted to Bazil and Robert, or their heirs. It is claimed, also, that at the time it registered the title to the property the defendant, through its officer or officers, had knowledge of plaintiffs' rights and claim, and that it acted fraudulently in not making plaintiffs parties to the registration proceeding. The court found that defendant was not guilty of any actual fraud in omitting to make plaintiffs parties to the registration proceeding, and that finding is sufficiently sustained by the evidence..

■ The questions are presented whether, after platting the land in the way they did and conveying away all of block 1, Bazil and Robert retained any title or interest in the northerly half of the then Water street as shown on the plat, or in any land northerly of that street, or whether, in fact, there was at that time any land northerly

of Water street. The government subdivision, owned by Bazil and Robert at the time this original plat was made and the lots in block 1 were sold and conveyed, extended to the Mississippi River as its northern boundary. The plat indicates that the platted land, including Water street, extended to the river. It is significant that the north and south streets in the platted addition ended in Water street. Robert street has since been extended by a bridge across the river. The court could well find that the plat was intended to and did extend to the river as its northerly boundary. One buying lots fronting on Water street at that time could well assume that there was nothing between his lots and the river to interfere with or prevent his free access from his lots to the river at all times. The street in front of his lots was no such hindrance and rather facilitated than hindered his access to the river. The court could well find, as it did, that block 1 of the addition was bounded on the north by the Mississippi River, with only Water street intervening between the lots and the river. That a river often, either suddenly or gradually, varies its course and flow to a greater or lesser extent within the river basin or valley is well known.

To hold that one who plats and then conveys away his land up to a river boundary nevertheless retains title to any land between the bank and low-water mark would permit the former owner to erect fences and barriers along the river bank so as wholly to deprive the owner of the shore land or lots from access to the river.

The next question is: Did Bazil and Robert retain any fee title or interest in the northerly half of Water street which could and did revert to them when the street was vacated? Where a street is dedicated by plat and there are lots or land on both sides of the street owned by the platter and dedicator, the lots on each side of the street carry title to the underlying fee only to the center of the street, and, if the street is vacated, the fee title to the center thereof reverts to the owners of the lots or land on each side of the street. But, where there are lots or land owned by the dedicator on only one side of the street and he owns the lots or land only up to and including the street, so that the street extends to the boundary of his land and he owns nothing on the other side

thereof, the rule seems to be that the dedicator, after parting with the lots bordering the street, retains no further fee or interest in the street, and, upon vacation thereof, the fee to the street reverts to the lot owners who obtained title from the platter or dedicator. In the case of In re Robbins, 34 Minn. 99, 24 N. W. 356, 57 Am. R. 40, it was held that where an owner platted his land and laid out a street on the margin of and wholly on his own land his conveyance of lots bordering on the street carried the fee in the street to the opposite boundary line thereof, and he retained no interest in any part of the street.

In Wait v. May, 48 Minn. 453, 51 N. W. 471, there was a plat of land bordering on Lake Minnetonka. A street was platted and dedicated along the margin of the lake. Lots were platted fronting on that street, with the street intervening between the lots and the lake. Lake Minnetonka is navigable water. The question presented was whether a lot owner, the subsequent grantee by deed of one of these lots, took, in connection therewith, the fee title to the whole of the street in front of his lot, with the riparian rights incident to ownership of a lot bordering on the lake. The court held that such fee to the entire street in front of the lot, with the riparian rights, passed by the deed of the lot to this lot owner.

In Hall v. Connecticut Mut. L. Ins. Co. 76 Minn. 401, 406, 79 N. W. 497, 498, the court said:

"Of course, where land bordering on navigable water is platted so as to lay out a street along the shore or bank, the fee of the lots on the opposite side of the street extends to the water, subject to the public easement, and the riparian rights attach to the lots."

That statement, however, was not the deciding factor in the case and may be considered *dictum*. There were in that case lots platted on both sides of the street.

In City of St. Paul v. C. M. & St. P. Ry. Co. 45 Minn. 387, 391, 48 N. W. 17, 18, in speaking of lots fronting on a public landing or levee on the margin of the river, the court said: "The title of each grantee extended, subject to the public right, across the landing or levee to the river."

In Betcher v. C. M. & St. P. Ry. Co. 110 Minn. 228, 124 N. W. 1096, there was a conveyance of a lot fronting on a levee on the Mississippi River. The description of the lot was by metes and bounds, one of the boundaries being the levee. It was held that the deed carried title to the levee in front of the lot, extending to the river.

The following authorities tend to sustain the rule stated: 2 Tiffany, Real Property (2 ed.) § 446, p. 1665; 9 C. J. § 97, p. 203; Haberman v. Baker, 128 N. Y. 253, 28 N. E. 370, 13 L. R. A. 611; Johnson & Co. v. Arnold, 91 Ga. 659, 18 S. E. 370; Healey v. Babbitt, 14 R. I. 533; Saccone v. West End Trust Co. 224 Pa. 554, 73 A. 971, 24 L. R. A. (N. S.) 539; Johnson v. Grenell, 112 App. Div. 620, 98 N. Y. S. 629; Taylor v. Armstrong, 24 Ark. 102; Gifford v. Horton, 54 Wash. 595, 103 P. 988.

Plaintiffs, having no title to or interest in the northerly half of Water street in front of block 1 of this addition, or in the property covered by the decree registering title thereto in the defendant, are not entitled to have the decree set aside.

The case of Brisbine v. St. P. & S. C. R. Co. 23 Minn. 114, relied on by plaintiffs, is not similar as to the facts. The plat there printed as part of the recital of facts shows a strip of land 80 to 110 feet wide intervening between the lots and the river. The original plat showed a strip of land between the lots and the river, marked as a street 30 feet wide, but the court ruled that the plat, not being in compliance with statutory requirements, was ineffectual to constitute any dedication of this alleged street. This left the strip of land between the lots and the river as unplatted land. There had later been a public street or way 40 feet wide, next to the lots, acquired by user or common law dedication, but leaving a strip some 40 to 60 feet wide between this street and the river.

The trial court was justified in concluding that by their conveyances of the lots in block 1 of this addition Bazil and Robert conveyed all their title and interest in the fee in Water street and in the land here involved and the riparian rights attached thereto, subject only to the public easement in Water street.

120

■ It appears that on August 27, 1894, the city of St. Paul, then the owner of the lots in block 1 fronting on Water street, granted by ordinance a permit or lease to the Waterous Engine Works Company, a corporation, to occupy and construct buildings for a manufacturing plant on the property here involved, including Water street and extending northerly to the river. The Waterous company agreed to and did construct thereon its manufacturing plant. It agreed to pay to the city a nominal rental of one dollar per year. The permit or lease was for 50 years, with option in the company to have it extended for an additional 25 years. Thereafter, on or about October 8, 1894, the plaintiffs entered into a lease with the Waterous company for the same property, for the same period named and provided in the city ordinance, for a nominal rental of $10 per year, "as an inducement to said Waterous Engine Works Co. to improve, occupy and use said premises." On April 12, 1917, the Waterous company sold and transferred its buildings and interest in the property to the American Hoist & Derrick Company, a partnership, for a consideration of $50,000. That partnership then entered into possession of the property and thereafter made improvements and erected additional buildings thereon. It took the property subject to the leases above mentioned and continued to pay the $10 annual rental to plaintiffs up to and including the year 1923. No rent has been paid since that time. It is conceded that the realty company was owned and controlled by the members of the partnership, the American Hoist & Derrick Company. The corporation was nevertheless a separate entity. The present corporation, to which the West Side Realty Company conveyed the land on December 1, 1928, is a Delaware corporation, organized in April, 1928. Its stockholders were formerly members of or had some interest in the former partnership which had been dissolved by the death of one of the partners. But the new Delaware corporation is not shown to have assumed plaintiffs' lease or to have recognized that lease in any way. So far as appears, it has not become a tenant of the plaintiffs.

■ The trial court found that plaintiffs were guilty of laches in failing sooner to appear in the proceeding for registration of title

or bringing this action. A decree registering title is somewhat more conclusive and better protected from attack or opening up than an ordinary judgment. The decree shall forever quiet the title and be forever conclusive upon all persons named in the summons or proceeded against as parties unknown, and shall not be opened or vacated except as provided in the registration law. It is expressly provided that no decree or registration shall be adjudged invalid or set aside unless the action to set it aside be commenced within six months from the entry of such decree. 2 Mason Minn. St. 1927, §§ 8268, 8274. Section 8272 of the statutes grants a period of 60 days after a decree is filed for anyone not joined in the proceeding and having no notice thereof to apply to be permitted to answer and to have the decree reopened. Section 8273 provides that anyone acquiring an interest in the property pending the registration proceeding and before the decree of registration is entered "shall at once appear and answer" therein. It seems clear that the registration statute intends that a decree thereunder shall be final and not subject to attack after six months from the entry thereof in all ordinary cases. Here the decree was entered January 25, 1930. The court found that plaintiffs had actual knowledge thereof not later than August 22, 1930. The action was not commenced until April 10, 1933. The trial court could well find laches.

The plaintiffs contend that under 2 Mason Minn. St. 1927, § 9405, they had an absolute right to bring the action at any time within three years after discovery of the fraud claimed. That section is not a part of the title registration statute. It provides that an action to set aside a judgment obtained in a court of record on the ground of perjury or fraud may be set aside in an action for that purpose brought within three years after discovery of such perjury or fraud. That statute was enacted and in force long before there was any registration of title law. L. 1877, c. 131. If it had been intended that this statute should apply to decrees registering title under the registration law, first adopted in 1901, then the registration law, § 8274, would seem to serve no useful purpose. The registration act is a complete law covering the proceeding, the relief to

be had, and the effect of the decree entered thereunder. Containing within itself a specific statute of limitation, we are not permitted to look to some prior statute for a different period of limitation.

There are a number of decisions holding that under our general statute of limitations, or under some statute applying to the particular kind of cause of action involved, granting a specific time, after the cause of action accrues, to commence an action thereon, the doctrine of laches has no application to an action commenced within the time so limited.

In Brockman v. Brockman, 133 Minn. 148, 151, 157 N. W. 1086, 1087, the court said:

"If the case is brought within the statute, it is the duty of the court to grant relief; but the right to have a judgment vacated because of fraud of the prevailing party is not an absolute one. The granting of relief is governed by equitable principles and may be barred by the laches of the party seeking the relief." The statute there referred to is what is now 2 Mason Minn. St. 1927, § 9405. The court further held that "a party is not to be barred by laches * * * unless he have actual knowledge of the facts from which the right arises, or knowledge of such other facts as would put an ordinarily prudent man upon inquiry."

There, as here, the action to set aside the decree, in that case a decree of divorce, was not commenced until after the limitation period there applied had expired, but the plaintiff claimed he had no notice or knowledge of the decree until a few days before the action to set it aside was commenced. This court held the plaintiff barred by laches.

In the case of In re Estate of Barlow, 152 Minn. 249, 188 N. W. 282, 283, there was an application in the probate court to set aside the final decree in the estate. The there applicable statute was G. S. 1913, § 7393, providing that such a decree, made without notice, may be set aside for want of such notice, upon petition of any person interested in the estate. There had been long delay. The court said [152 Minn. 252]:

"The doctrine of laches, although formerly peculiar to equity, now applies to any action or proceeding not governed by an express

statute as the distinction between actions at law and suits in equity has been abolished, and applies to applications made under statutes such as this."

Petitioner was held barred by laches.

In Brown v. Hagadorn, 119 Minn. 491, 138 N. W. 941, the appeal was from an order denying an application for leave to answer in a proceeding to register title to certain land. The appellants were not named in or made parties to the registration proceeding. The appellants claimed the right to answer under R. L. 1905, § 3396, which is now 2 Mason Minn. St. 1927, § 8274, permitting an action to vacate a decree of registration within six months after entry thereof. The court held they were not entitled to answer under that section as a matter of right, because by § 3395, now § 8273, they, claiming as purchasers pending the registration proceeding, were required to answer "at once" and had not done so and had notice of the registration proceeding more than six months before making application to answer and after acquiring their alleged interest in the land. This court held that the trial court did not abuse its discretion in denying the application.

In the present case there was a delay of about nine years after defendant's predecessor in possession and occupant of the premises ceased to pay rent or to recognize plaintiffs' claim. There was a delay of over three years after the decree of registration was entered and a delay of two years and seven months after plaintiffs had actual knowledge of the decree before plaintiffs commenced the action. No valid excuse for the delay is shown.

The intent of the registration of title law, as therein clearly expressed, being that a decree therein entered shall not be set aside or questioned unless the action for that purpose be brought within six months from the entry of such decree, there is no absolute right to maintain such action after the expiration of the time so limited. And, while we hold that one not a party to the proceeding and not knowing or charged with knowledge thereof, may ask or bring an action to vacate the decree, the one seeking so to do must act with great promptness as soon as notice or knowledge of the proceeding or decree comes to him. If he fails to do so, he is barred. Whether

there has been laches is then within the sound discretion of the trial court. There has here been no abuse of that discretion.

■ The defendant urges that there was adverse possession of the property by the city of St. Paul, the West Side Realty Company, and this defendant, covering a period of more than 15 years. Unless there was adverse possession by the city, as against these plaintiffs, for a number of years prior to its conveyance to West Side Realty Company, the period of adverse possession is not established. What the character and extent of the interest of the city were, or the extent of its possession, is not clearly shown. It acquired by purchase the northerly half of this block 1 and established or attempted to establish a public levee. But when it leased to the Waterous company, and that company also leased from the plaintiffs and occupied under both leases, and the partnership, American Hoist & Derrick Company, recognized and paid rent under plaintiffs' lease, the possession by its tenants thereafter under such leases cannot well be said to be an exclusive possession by the city.

■ The fact that adverse possession for the statutory period was not shown does not entitle the plaintiffs to a reversal of the judgment where two other findings, each sufficient to sustain the conclusions of law and judgment, are sustained.

No reversible errors having been found in the findings of fact, conclusions of law, or judgment, the judgment appealed from is affirmed.

Affirmed.