ELDON SCOTT RHOADS v. WALTER H. RHOADS.[1]

June 21, 1940.

No. 32,231.

[1]Reported in 292 N. W. 760.

62

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *Benno F. Wolff*, for appellant.

*Sullivan & Moylan* and *McMeekin & Quinn*, for respondent.

HILTON, JUSTICE.

In this divorce action the contesting defendant prevailed. Plaintiff moved for amended findings of fact and conclusions of law or for a new trial. After denial, plaintiff appeals.

The 450-page record depicts conflicting testimony that is so characteristic of an action of this nature. Detailed recitation will not aid the bench, the parties, or the bar. The testimony created fact issues which the court could resolve favorably or adversely to plaintiff. While a survey of the record compels the conclusion that plaintiff's version might well have been accepted, still we are duty bound to affirm the lower court unless the findings of fact are unsupported as a matter of law.

After both parties rested the trial court stated:

"I want to announce right here, with my experience, while I regret the fact I have not had the benefit of expert psychiatrists, but from the study of both I was able to make, I am satisfied the matter presents a strictly psychopathic proposition. I also wish to announce that while the testimony is hopelessly conflicting, to me there is no wilful perjury in this case."

The trial court found that the plaintiff was a highly emotional woman and that "unfortunately plaintiff and defendant are of

such different mental and temperamental types as do not make easily for harmonious understanding." The court then found:

"That the many and varied allegations of alleged well defined, studied, and systematic course of cruel and inhuman treatment are not sustained by competent proof, are not true, and exist only in plaintiff's imagination, pure figments of fancy, gradually built up by an emotional, highly sensitive, nervous disposition, exaggerating trivial matters into ugly proportions, living with them, nursing them, until she believes them true."

The only medical testimony introduced was that of Doctors Ernest M. Hammes and Harry Oerting. While both testified that plaintiff was emotionally upset and distressed during times that they had examined her, we find nothing in their testimony that leads to confirmation that plaintiff's story was a figment of fancy. In fact Dr. Hammes testified when asked if the marital conduct related by plaintiff, if true, could cause this emotional disturbance: "My opinion is that it did, because I was unable to find any other cause and I was unable to find any other factor in her life which was producing any upset emotionally." Still we do not find a basis to reverse the trial court. It accepted, as it properly could, most of the testimony given by defendant and those supporting his version. Charges of cruel and inhuman treatment, the very foundation of plaintiff's case, were found to spring from her imagination and exaggeration of minor incidents which in themselves would not justify a divorce. Weight and credibility of testimony are matters largely for the trier of fact. The trial court is under no compulsion to resolve that one version was entirely false and the other true. Often a court, as that below, concludes that while a particular witness has not been guilty of perjury, still it thinks that the testimony should not be given weight or accepted as the accurate disclosure of events as they actually occurred. Thus perjury may be absent while imagination and exaggeration play decisive roles. Very properly a trier of fact may conclude that these elements color a particular witness's

version. The right and power to consider these factors is an essential incident of the power to determine the credibility of a particular witness or the weight to be given to the testimony.

Dr. Hammes, the neurological specialist, made no attempt to testify that the events related by plaintiff in fact took place. His testimony was that these related events were the only explanation that he could find for her emotional upset. Obviously the trial court was not bound by this testimony but could still find that in its essence plaintiff's story was imaginative and exaggerated. Dr. Hammes testified that the only way he could find whether grievances are imaginary is that, after the patient gets better, realization that the grievances have been exaggerated occurs to them. He testified that plaintiff had not been under his care long enough to determine whether her claims were real or imaginary. This disposes of the claim that the medical testimony conclusively establishes that plaintiff's version was not imaginary.

On the whole, the findings of fact are sustained by the evidence. While some of the findings perhaps go beyond the evidence, a careful reading of the record convinces us that those that are decisive are well supported. For this reason the findings will stand.

Plaintiff assigns as error the refusal of the trial court to amend its findings and conclusions of law to award plaintiff separate maintenance and custody of the single child of the marriage. In this, too, plaintiff must fail. Nothing in the findings justifies our holding that as a matter of law it was error not to give separate maintenance or custody. The trial court could make the findings that it did. They negative plaintiff's claim that the defendant has been guilty of violation of marital obligations, at least sufficiently to justify relief for plaintiff. The necessary elements for separate maintenance are not present in the findings, and the trial court was under no duty to make such findings as would justify granting this relief. Mere temperamental differences which perhaps, as plaintiff claims, have caused some difficulty are not sufficient, at least against the

denial of the trial court, to justify our holding that as a matter of law there should have been separate maintenance and custody ordered. We think that credibility was the controlling element in this case and that is primarily for the trial court upon the conflicting evidence.

It was not reversible error under the facts to refuse to allow Dr. Oerting, an internal medicine physician who had examined and advised plaintiff, to testify whether continued marital relations would be injurious to plaintiff's health. Dr. Oerting testified that in March, 1938, when he saw plaintiff, she "was so distressed mentally and wept so much that I decided she was entirely out of my field, and I referred her to Dr. Hammes for a neurological examination and treatment." Dr. Oerting was qualified to express an opinion, but since he regarded her condition as one for a neurological specialist and inasmuch as Dr. Hammes testified favorably for plaintiff on the same point, we do not think that prejudice resulted to plaintiff.

With this, the decisive points have been discussed. Appellant has raised others and discussed the evidence in detail. We have carefully read the record and are compelled to conclude that there was no error.

Plaintiff is allowed $250 for attorney's fees and her disbursements to prosecute this appeal since it appears to have been made in good faith and upon reasonable grounds.

Order affirmed.