# CLARA LOCKSTED v. GUST LOCKSTED.[1]

November 22, 1940.

No. 32,528.

[1]Reported in 295 N. W. 402.

*Tautges, Eichelzer & Tautges,* for appellant.
*Ossanna, Carlson, Hall & Kotrich* and *William O. McNelly,* for respondent.

HILTON, JUSTICE.

Appeal from a judgment in a divorce action.

Assailed is the jurisdictional allegation of residence. The argument is hypertechnical. While imperfect, the allegation is sufficient.

The complaint alleged cruel and inhuman treatment. To this, charges, countercharges, and denials were directed. Testimony adduced was in nearly complete conflict. The entire record has been read, but no purpose would be served by reciting the evidence. Whether there was cruel and inhuman treatment was a fact issue pivoted on credibility. In determining this appeal, it must be remembered that if a decisive finding is supported by sufficient evidence and is adequate to sustain the conclusions of law, it is immaterial whether or not some other findings are not so supported. Sollar v. Sollar, 176 Minn. 225, 222 N. W. 926; Fidelity & Casualty Co. v. Crays, 76 Minn. 450, 79 N. W. 531; Lamprey v. American Hoist & Derrick Co. 197 Minn. 112, 266 N. W. 434; Rhoads v. Rhoads, 208 Minn. 61, 292 N. W. 760.

Point is made that the evidence is insufficient to sustain the findings as to cruel and inhuman treatment. We cannot agree that plaintiff's evidence is incredible or improbable. If many essential matters were testified to through leading questions, counsel on this appeal (who are substitutes) cannot complain. Objection should have been made below. It was a factor in the case, and we must presume that the trial court considered it in reaching its conclusion.

We have no difficulty holding that finding VI(c) is sustained by the evidence. What is more, it alone is determinative and amply justifies the conclusion of law that "plaintiff is entitled to an absolute divorce." The trial court could believe plaintiff's testimony that not long after the marriage she was beaten, hit, and choked by defendant and that this continued for a period of nearly 28 years. There are instances in the record which show that plaintiff was at times a willing belligerent. But, by her testimony, there was provocation, as, for instance, the time when defendant was convicted in the municipal court of Glencoe for assault and battery. Another instance when plaintiff participated in the fracas was over the automobile keys. But the record contains instances when she did not enter the conflict as a "willing belligerent." For example, when she was struck during the first year of the marriage; when the car door was shut on her head, although she did hit defendant afterwards with a colander when he grabbed for her throat; when defendant opened the automobile door and "kicked me out" and let her walk home. And it should be noted that although plaintiff may have encouraged the difficulty in 1936 which resulted in the conviction, the fact remains that defendant did not simply "stand her off" as he generally claims he did, but was found by the court to have committed a battery upon her. Of course, if defendant's version were accepted, he was not at fault, but the trial court might well believe plaintiff. Defendant had been "roasting" plaintiff, called her lazy, and "he was drinking and he cussed me and called me all kinds of names." She told him she would not "take it like that," and the conflict started. Defendant "grabbed me by the throat * * * and hit me with the end of the [spade] handle."

Prior to 1936 she testified that she was beaten "sometimes it was a month between times, and sometimes longer and sometimes sooner." Defendant argues that "these few and far between instances of claimed assault, even if true,

are insufficient to sustain a finding of cruel and inhuman treatment." We submit that the proposition crushes under its own weight. Nor can attention be paid to the point that plaintiff did not ask defendant why he treated her as he did. What justification or default in law this shows is impossible to comprehend. Certainly we cannot say that as a matter of law the findings are unsupported on this particular point. It is largely a question for the trial court to decide how much is necessary before cruel and inhuman treatment will be found. Plaintiff's failure to call as a witness the litigants' daughter was merely a factor to be considered. On this finding of cruel and inhuman treatment by physical force, a divorce was justified.

In addition, there are other findings which support this conclusion of law such as:

1. Finding VI(b) (calling plaintiff vile names and swearing at her).

2. Finding VI(d) (using intoxicating liquors and frequently indulging to excess).

3. Finding VI(e) (conduct injurious to health of wife and such that it justified her ceasing to live as man and wife).

The finding that defendant "substantially admitted" improper relations with certain women is also supported by testimony, in this instance, by plaintiff's brother-in-law.

In view of the foregoing, it can hardly matter that other findings are probably unsupported, in some degree at least, since those mentioned clearly justify the conclusion of cruel and inhuman treatment.

Defendant raises the point that plaintiff's testimony lacks the requirements expressed in 2 Mason Minn. St. 1927, § 9905, which reads:

"Divorces shall not be granted on the sole confessions, admissions, or testimony of the parties, either in or out of court."

One witness testified of having seen black and blue marks on plaintiff on two occasions. Another testified she had observed the same several times.

The rule is that it is "unnecessary that the plaintiff be corroborated as to each item of evidence. It is sufficient if the corroborating evidence tends in some degree to confirm the allegation relied upon for a divorce." 2 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 2795. A recent case is Graml v. Graml, 184 Minn. 324, 238 N. W. 683. Since the purpose is to prevent collusion, greater liberality is justified where the divorce is fervently contested. There was sufficient corroboration to satisfy the statute.

Error is assigned for the refusal to permit two witnesses to testify as to disposition and temperament of defendant. There is no reversible error. The relationship of the parties over a long period of time was dwelt upon at length. A person's general temperament is often a very inaccurate gauge of his disposition toward his wife. While the court might well have permitted the testimony, a reversal cannot be founded upon this.

It is claimed that the trial court should have reopened the case for the taking of additional testimony or ordered a new trial. During the long pendency of this matter, there was opportunity to garner all the required witnesses. Defendant seeks to saddle responsibility upon the attorney he employed at that time. The trial court had all the affidavits before it, including those of the attorneys, and it cannot be held as a matter of law that there was an abuse of discretion. This is a matter primarily for the trial court. It was also contended that plaintiff testified falsely concerning her relations with one Hecksel. This may be. But the trial court believed plaintiff, and she denied any relationship with the man. It was within the scope of its power to decide on credibility.

Custody of the child was granted to plaintiff. "The disposition of the custody of children made by a trial court

will not be reversed on appeal except for an abuse of the *broad* discretion with which the court is invested." 2 Dunnell, Minn. Dig. (2 ed. & 1932 Supp.) § 2800. Although defendant may not agree with the trial court, surely it cannot be seriously argued that discretion was exceeded.

Permanent alimony of $2,825 and attorney's fees of $600 were allowed and made a specific lien upon certain realty. Both are claimed to be excessive. Complaint is also made that the court found certain realty may be worth as much as $12,000 above encumbrances, when the highest figure given, and by plaintiff, was $11,500. The finding is not to be commended. Trial courts should avoid a practice such as here evidenced. Any error in the finding will not be regarded as prejudicial, however, for the trial court, on the evidence, all of which has been read, could conclude that plaintiff was entitled to permanent alimony of $2,825, and this is the decisive factor. It was well within the discretion of the court. See, generally, 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 2803; 2 Mason Minn. St. 1927, § 8602. The trial court also invoked complaint by finding that the realty was acquired through plaintiff's efforts as much as by defendant. The original farm was inherited by defendant from his parents. His mother lived with the litigants after their marriage. The court found this farm was acquired as much through plaintiff's activity as by defendant's work and relationship. This finding must be understood to mean that plaintiff helped insure the existence of the property when the time for inheritance came. The finding can stand. The amount of alimony granted will not be altered. But payment should be made not as a lump sum but in installments of $60 a month so long as plaintiff lives or remains unmarried or until $2,825 has been paid. Temporary alimony must be paid without delay. The lien ordered by the trial court will not be disturbed, but it is conditioned by the modifications here ordered.

The attorney's fees are excessive. Six hundred dollars is allowed, but for fees below and in this court.

The other points raised have been considered but need not be discussed.

The judgment is so modified and as modified is affirmed.

GALLAGHER, CHIEF JUSTICE (dissenting).

I dissent to a modification of the trial court's order pertaining to the allowance of permanent alimony and attorney's fees. These items were within the discretion of the trial court, and there has been no abuse of that discretion.

PETERSON, JUSTICE (dissenting).

I concur in the dissent.

MR. JUSTICE LORING took no part.

