## LORRAINE SIMBERG v. GORDON SIMBERG.

94 N. W. (2d) 270.

January 9, 1959—No. 36,779.

*Marlon O. Haugen* and *Alex Leslie Janes, Jr.,* for appellant.
*Grannis & Grannis,* for respondent.

KNUTSON, JUSTICE.

Plaintiff and defendant were married in St. Paul, Minnesota, on February 23, 1952. Plaintiff was then 23 years of age and defendant 29.

Defendant is a boilermaker. His work is such that it is frequently necessary for him to spend long periods of time away from St. Paul. A few days after the parties' return from a honeymoon, defendant went to work on a job at Paducah, Kentucky. Shortly thereafter he went to Harrods Creek, Kentucky, to work. Plaintiff visited him there for a few days about May 31, 1952, and later moved to that place, where the parties lived together until they both returned to St. Paul in October 1952. During the month of October they lived in a basement, partly

finished for living, in the home of defendant's parents. In November 1952, defendant went to work at Aurora, Minnesota, necessitating his absence from home during the week. He usually returned home over weekends, and the parties lived together during such visits until January 1, 1953. This action for divorce was commenced on March 1, 1953. Defendant answered, denying plaintiff's charges. He did not want a divorce. After a trial, the court granted plaintiff an absolute divorce on the ground of cruel and inhuman treatment. This appeal is from a decree entered pursuant to the court's findings.

The only question presented here is whether the evidence sustains the trial court's findings of cruel and inhuman treatment.

■ The general rule that the findings of a trial court will not be disturbed on appeal unless the findings are manifestly contrary to a fair preponderance of the evidence is particularly applicable in contested divorce cases.[1] There are many reasons why this should be so. In a great majority of contested divorce cases, when living together has become so impossible to husband or wife that a divorce is sought, so much bitterness and ill feeling has been engendered that it is difficult to obtain a dispassionate view of the conduct of each of the parties toward the other. Charges and countercharges are often exaggerated or minimized according to the desire of the parties (and sometimes of their friends or relatives) to present as unfavorable a case as is possible, if a divorce is desired, or as favorable a case as is possible, if a divorce is not desired. In evaluating such evidence and giving it the weight it deserves, the trial court has the opportunity to view the witnesses and observe their demeanor and to try to ascertain the truth of the facts alleged to exist by a close observation of the parties and their apparent willingness to relate facts as they are or to exaggerate or minimize them, as the case may be. Where the evidence may permit a finding either way, the trial court may also properly have in mind some intangible factors which are not apparent from reading a printed record of the trial but which are properly considered in determining whether the marital

---

[1]Albertson v. Albertson, 243 Minn. 212, 67 N. W. (2d) 463; Wilson v. Wilson, 229 Minn. 126, 38 N. W. (2d) 154; Ellingson v. Ellingson, 227 Minn. 149, 34 N. W. (2d) 356; 1 Dunnell, Dig. (3 ed.) § 411.

status of the parties should be permanently altered. Among these factors we might mention possibility of reconciliation; the outside influence and interference with the marriage by parents and others who may, unwittingly or otherwise, seek to. destroy the marital status and the effect of such influences, if any there were, particularly on young people, in causing an affection for each other which once existed to grow cold, as well as the possibility of eliminating such influence and thereafter reawakening a dormant affection; the mental and physical makeup of the parties and their ability to withstand abuse; the impact of neglect and mistreatment upon the parties, having in mind their physical and mental makeup; the effect of granting or denying a divorce on children; and other factors of a similar nature which are, and often should be, considered by the trial court but which it is difficult for us to evaluate.

■ It is also claimed that the corroboration is insufficient to meet the requirements of M. S. A. 518.28. Corroboration is required in order to prevent collusive divorces. Where the case is contested and tried on the merits, the necessity for corroboration is less important than in uncontested divorce cases. While the corroboration here is not strong, it is sufficient to meet the tests we have established in similar cases.[2]

■ The evidence in this case is not strong, but it is hardly distinguished from the evidence in Wilson v. Wilson, 229 Minn. 126, 38 N. W. (2d) 154. In some respects the evidence of cruel and inhuman treatment is stronger than in that case. It would serve no useful purpose to bench or bar to recite in detail the evidence relied upon to establish cruel and inhuman treatment. It could only do harm to the people involved to do so. It is enough to say that we have carefully examined the record, and, if we accept the testimony of plaintiff as true, which the trial court obviously did, it sufficiently sustains the finding of cruel and inhuman treatment under the tests we have followed in determining whether the necessary quantum of proof has been adduced. It is true that the testimony of plaintiff and defendant is conflicting in many

---

[2]Wilson v. Wilson, 229 Minn. 126, 38 N. W. (2d) 154; Louden v. Louden, 221 Minn. 338, 22 N. W. (2d) 164; Visneski v. Visneski, 219 Minn. 217, 17 N. W. (2d) 313; Gerard v. Gerard, 216 Minn. 543, 13 N. W. (2d) 606; Locksted v. Locksted, 208 Minn. 551, 295 N. W. 402; Graml v. Graml, 184 Minn. 324, 238 N. W. 683.

respects, but it was for the trial court to resolve such conflicts, and, it having done so, we must accept the evidence most favorable to the court's findings.

It might be mentioned that, among other things, defendant claims that the parties did not live together long enough so that any systematic course of ill treatment by defendant could have existed which could be considered cruel and inhuman treatment under the rules applicable to establishing cause for divorce.

It is quite impossible to set a period of time after marriage within which one spouse is immune from a charge of cruel and inhuman treatment of the other. Sometimes the early neglect and mistreatment of a wife by the husband, at a time when the greatest devotion would be expected, may be more devastating than treatment of a similar nature later during their married life when each party has become accustomed to the other's idiosyncrasies. Here, again, much must be left to the good judgment of the trial court in determining whether the neglect or mistreatment has continued for such a period of time that it is inimical to the health or welfare of the party seeking the divorce. While these people were married only slightly more than a year and lived together only a brief part of that interval, the testimony of plaintiff is such that, if true, it in all probability would have had an effect upon her health and welfare that would be sufficient to justify the granting of a divorce. The trial court also undoubtedly considered the probability of the continuance by defendant of conduct of a similar nature.

Affirmed.