*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1550**

Jerry M. Gelao, et al.,
Appellants,

vs.

Zumbro Township,
Respondent.

**Filed June 15, 2026**
**Reversed**
**Bratvold, Judge**

Wabasha County District Court
File No. 79-CV-24-228

Mark Thieroff, Siegel Brill, P.A., Minneapolis, Minnesota (for appellants)

Jessica E. Schwie, Joshua P. Devaney, Kennedy & Graven, Chartered, Minneapolis, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Ross, Judge; and Reilly, Judge.[*]

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

Appellants seek review of a district court order granting summary judgment in favor of respondent township. Appellants argue that the district court misinterpreted the parties'

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

easement agreement to grant respondent a permanent utility easement over the "four corners" of appellants' property, including a disputed portion of an abutting vacated roadway. Because the easement agreement includes an unambiguous legal description of the property that is subject to the easement and that description does not include the disputed portion of the vacated roadway, we reverse.

**FACTS**

The parties do not dispute the relevant facts. Appellants Jerry and Patricia Gelao[1] owned two adjacent parcels, Lots 1 and 2, which lie in Hexum's subdivision, Zumbro Falls. Lots 1 and 2 abut a lake to the west. When Hexum's subdivision was originally platted in 1955, the plat dedicated a public roadway running along the eastern edge of Lots 1 and 2. The public roadway was known as 563rd Street.

In 2003, the Gelaos petitioned respondent Zumbro Township to vacate part of 563rd Street, described as "parcel A" on a certificate of survey. The township granted the petition and vacated parcel A. Also in 2003, Patricia deeded the Gelao property to herself and Jerry; the 2003 deed includes a legal description that refers to Lots 1 and 2 and "that part of the public roadway" using a metes-and-bounds description. The parties agree that the public roadway described by metes and bounds in the 2003 deed is parcel A. This opinion refers to Lots 1 and 2 and parcel A as the "Gelao property."

Maintenance of 563rd Street posed challenges. In 2009, Hexum's subdivision residents petitioned the township to vacate the remainder of 563rd Street as a public

---

[1] This opinion refers to the appellants by their first names when necessary for clarity.

2

roadway. The township granted the petition and vacated the remainder of 563rd Street, including the "right of way of the road serving" the Gelao property. The certificate of survey, dated February 2003, depicts Lots 1 and 2, parcel A, and the remainder of 563rd Street, which is labeled as "parcel X" for easy reference.[2]



---

[2] This certificate of survey was submitted on summary judgment, and the parties do not dispute its accuracy. This opinion crops the drawing from the certificate of survey to show only the portion relevant to this appeal, adds the label "parcel X," and underlines the labels for parcels A and X. The rest of the drawing is copied from the certificate of survey.

In April 2018, the township sought to establish a subordinate service district (SSD) to "provide sanitary sewer to this area."[3] The township sent "a letter and petition" to affected property owners that stated "the SSD was necessary in order to 'receive funding through State grant/loan programs' for purposes of 'exploring options for the best treatment method for sewage.'" The Gelaos signed the SSD petition, and the township "received sufficient signatures to proceed."

After a public hearing, the township adopted a resolution "to establish and plan the various aspects of installing the SSD" and "began work on drafting an ordinance to govern the SSD, designing the system, and obtaining the easements necessary to install it." The township's engineer "planned for a lateral to cross [the Gelao] property which coincided generally in the location of the former public road running through the . . . property."

In October 2020, the Gelaos signed an easement agreement that granted the township

> a permanent, non-exclusive easement over, under, and across their Parcels (the "Easement Area") for all purposes necessary to construct, operate, maintain, alter, repair and replace the Sewage Treatment System in accordance with the terms and conditions contained herein. The Easement Area excludes the portions of the Parcels currently covered by residences and other permanent buildings.

---

[3] An SSD is "a defined area within the town in which special services are provided." Minn. Stat. § 365A.02, subd. 1 (2024). "'Special services' means one or more governmental services or additions to townwide services provided by the town specially for the area and financed from revenues from the area." *Id.*, subd. 2 (2024).

The easement agreement provided that the easement area was legally described in Exhibit B:

> Lot 1 and Lot 2, Hexum's Subdivision, according to the plat thereof, on file and of record with the office of the County Recorder, in and for Wabasha County, Minnesota, *together with the following described parcel: The part of the Public Roadway, as platted in Hexum's Subdivision*, Wabasha County, Minnesota *described as follows*: Beginning at the southeast corner of Lot 1, Hexum's Subdivision (for the purpose of this description the east line of said Lot 1 has an assumed bearing of N 00° 00; 00"); thence N 90° 00' 00" E along the south line of said Hexum's Subdivision, 66.00 feet to the southeast corner of the Public Roadway; thence N 00° 00' 00" E along the east line of said Hexum's Subdivision, 35.00 feet; thence N 390 33' 28" W, 103.63 feet to a point on the east line of Lot 2, Hexum's Subdivision, being 35.00 feet south of the northeast corner of said Lot 2; thence S 00° 00' 00" W along the east line of said Lot 1 and Lot 2, a distance of 114.90 feet to the point of beginning.

(Emphasis added.) The parties agree that Exhibit B expressly describes Lot 1 and Lot 2 and that the metes and bounds after the phrase "together with" and "the public roadway" describes parcel A. The parties also agree that the language of Exhibit B is identical to the legal description in the 2003 deed.

In 2021, the Gelaos built a retaining wall on the eastern boundary of Lots 1 and 2. In 2023, the township's engineer advised the Gelaos "that the plan was to have the lateral run under" the retaining wall. Although not specifically stated in the record, the allegations in the complaint and the parties' arguments indicate that the township proposed that the lateral would run across or under parcel X.

The Gelaos objected to the proposed location of the lateral and attempted to persuade the township to change it. After discussions with the Gelaos' attorney, the

5

township's attorney agreed to present revised plans to the township "so as to avoid the Gelaos' retaining wall." The township's attorney prepared a memorandum for the township board; the memorandum stated that "the additional cost [to modify] the lateral would be minimal." The township "ultimately decided to follow through on its original plan to run the lateral through the [Gelao] property under the retaining wall."

In March 2024, the Gelaos sued the township, serving a complaint that alleged the township breached an agreement to settle the easement dispute. The Gelaos' complaint also sought declaratory judgments that the easement "does not include the portion of the Gelao Property on which the Township intends to construct" the lateral and that the SSD "was never validly established and is therefore void."

The township moved for summary judgment, arguing that the parties did not enter into "any settlement agreement," that the easement encompassed "the four corners" of the Gelao property, including parcel X, and that the SSD "was properly formed." In April 2025, the Gelaos also moved for summary judgment. The Gelaos submitted an affidavit from a surveyor who prepared a drawing of "the legal description of the easement

area on the Gelao property" with reference to Exhibit B from the easement agreement. We include the relevant part of the surveyor's drawing below:



After a hearing, the district court granted summary judgment in favor of the township. It determined that (1) the township "did not enter into a binding settlement agreement to reroute the proposed lateral/pipeline"; (2) the easement "covers the entire four corners of [the Gelao] Property, including the adjacent vacated roadway"; and (3) the township "complied with all of the statutory requirements in the formation of the SSD."

The Gelaos appeal.

## DECISION

The Gelaos do not challenge the dismissal of their claim related to the settlement agreement or their request to declare that the SSD was not properly established. Instead,

the Gelaos argue only that the district court erred by granting summary judgment to the township and denying the Gelaos' motion for summary judgment related to the scope of the easement. The Gelaos argue that the easement "does not include the portion of the Gelao Property on which the Township intends to construct" the lateral and contend that the district court misinterpreted the easement to extend to parcel X.

"Summary judgment is appropriate when 'there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Justice v. Marvel, LLC*, 979 N.W.2d 894, 898 (Minn. 2022) (quoting Minn. R. Civ. P. 56.01). Appellate courts "review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party and resolving all doubts and factual inferences against the moving party." *Staub v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 620 (Minn. 2021). Summary judgment is inappropriate "when reasonable persons might draw different conclusions from the evidence presented." *Senogles ex rel. Kihega v. Carlson*, 902 N.W.2d 38, 42 (Minn. 2017) (quotation omitted).

Determining which portions of the Gelao property are subject to the utility easement turns on the language of the easement agreement. An easement is "an interest in land in the possession of another which entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists." *Minneapolis Athletic Club v. Cohler*, 177 N.W.2d 786, 789 (Minn. 1970). An express easement is a contract. *Lindberg v. Fasching*, 667 N.W.2d 481, 487 (Minn. App. 2003), *rev. denied* (Minn. Nov. 18, 2003). And appellate courts review the interpretation of a contract de novo. *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009).

"The primary goal of contract interpretation is to ascertain and enforce" the parties' intent. *Id.* But when a contract's language is unambiguous, "the plain and ordinary meaning of the contract language controls." *Linn v. BCBSM, Inc.*, 905 N.W.2d 497, 504 (Minn. 2018) (quotation omitted). "A contract must be interpreted in a way that gives all of its provisions meaning." *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995).

Under Minnesota law, the unambiguous language of an easement agreement must be enforced. "The extent of an easement depends entirely upon the construction of the terms of the agreement granting the easement." *Scherger v. N. Nat. Gas Co.*, 575 N.W.2d 578, 580 (Minn. 1998). "The written instrument creating the easement . . . defines the scope and extent of the interest in land," including its "specific width, length and location." *Larson v. State*, 790 N.W.2d 700, 704 (Minn. 2010) (quotation omitted). "It is well settled that the extent of an easement should not be enlarged by legal construction beyond the objects originally contemplated or expressly agreed upon by the parties." *Cohler*, 177 N.W.2d at 789-90. Courts may not change an easement if its written description is "capable of exact interpretation." *Hwy. 7 Embers, Inc. v. Nw. Nat'l Bank*, 256 N.W.2d 271, 277 (Minn. 1977).

The district court aptly described the central issue as "what property does the easement apply to. Or more specifically, does it cover all, or a portion of the Gelaos' property." Stated somewhat differently, the parties agree that the easement extends to Lots 1 and 2 and parcel A, but dispute whether the easement extends to parcel X.

Parcel X, like parcel A, is a vacated public roadway—parcel A was vacated in 2003, and parcel X was vacated in 2009. "Every conveyance of real estate which abuts upon a vacated street, alley, or other public right-of-way shall be construed to include that part of such right-of-way or street which, either by operation or presumption of law, attaches thereto upon such vacation, *unless such conveyance expresses a contrary intention*." Minn. Stat. § 507.17 (2024) (emphasis added). In other words, under Minnesota law, a conveyance of real property—including a conveyance by easement agreement—presumptively includes a vacated roadway that abuts the conveyed real property.

Here, the district court first determined that, at the time the Gelaos conveyed an easement to the township, the Gelaos owned Lot 1, Lot 2, and the entire vacated road abutting the two lots (parcel A and parcel X). The district court acknowledged, however, that "only Lots 1 and 2 and the portion of the roadway vacated in 2003"—parcel A—were "specifically described" in the easement agreement.

The district court nonetheless applied "a longstanding legal principle" that the "owners of property abutting a plat dedicated road own the land underlying the road." The district court also applied a presumption that the easement agreement conveyed an interest in the Gelao property and included "a conveyance of the vacated road as well, barring an obvious intention to exclude the vacated roadway."[4] The district court quoted the easement

---

[4] The district court's memorandum does not cite section 507.17 but appears to apply similar principles. Instead, the memorandum refers to two older supreme court cases. *Lamprey v. Am. Hoist & Derrick Co.*, 266 N.W. 434 (Minn. 1936); *White v. Jefferson*, 124 N.W. 373 (Minn. 1910). Both cases predate section 507.17, which was enacted in 1939 and controls our decision. 1939 Minn. Laws ch. 386, at 728.

agreement and noted that the Gelaos conveyed an easement "over, under and *across their parcels*." And the district court determined that the Gelao property "included not only Lots 1 and 2, but also the vacated roadway." The district court reasoned that the easement agreement showed "no clear intent by the Gelaos to exclude any of the vacated roadway." The district court concluded that the township's easement "applied to the original Lots 1 and 2, as well as the adjacent Vacated Roadway, with the only exception being any permanent buildings or residences on the property."

The Gelaos argue that section 507.17's presumption does not apply here because "the parties expressly stated that only a specific portion of the vacated road"—parcel A—"would be subject to the Easement."[5] The Gelaos contend that the easement agreement expresses the parties' intent to exclude parcel X because the agreement's legal description—Exhibit B—includes only Lot 1 and Lot 2 "together with" the "Public Roadway, as platted in Hexum's Subdivision" with an exact description of parcel A.

The township counters that, "simply by listing 'Lot 1 and Lot 2, Hexum's Subdivision' in the legal description in the Easement, the Easement covers the entirety of the property described by that language, which is the four corners of [the Gelao] property,

---

[5] The Gelaos also argue that the presumption "applies to conveyances of fee title, not to easement grants." We disagree. Minnesota Statutes section 507.01 (2024) states that the word "conveyance," as used in chapter 507, "includes every instrument in writing whereby *any interest in real estate* is created, aliened, mortgaged, or assigned or by which the title thereto may be affected in law or in equity, except wills, leases for a term not exceeding three years, and powers of attorney." (Emphasis added.) An easement is "an interest in land" that allows the easement holder to use another person's property for a limited purpose. *Cohler*, 177 N.W.2d at 789. Thus, the presumption described in section 507.17 applies to the conveyance of an easement in a written instrument.

11

including the fee underlying the Vacated Road." The township argues that the "together with" language in the easement agreement is not "exclusionary" and therefore does not express an intent to convey an easement interest in only parcel A—the vacated roadway as of 2003. The township maintains that the easement agreement "expresses an intent to cover entire parcels, not portions thereof," and that the legal description of parcel A was superfluous.

This court's nonprecedential opinion in *Smeby v. Hanson* tracks our analysis of this issue. No. A20-1329, 2021 WL 2201679 (Minn. App. June 1, 2021), *rev. denied* (Minn. Aug. 24, 2021).[6] In that appeal, Smeby and the Hansons owned abutting parcels originally owned by the Nesses. *Id.* at *1. The boundary between the parcels ran along "a swath of undeveloped land that, based on the Nesses' 1964 plat, comprised an L-shaped road dedicated to the public." *Id.* With the Nesses' approval, the township vacated the public road in 1967. *Id.* The Nesses then conveyed one parcel to the Thomases in 1976 "by a deed that described the boundary in reference to the innermost edge of the road, effectively *excluding* the swath from the conveyance." *Id.* But when the Thomases conveyed the parcel to the Hansons in 2006, "the Thomas-to-Hanson deed *included* the disputed swath." *Id.* "In 2019 the personal representative of the Nesses' estate conveyed the swath to Smeby by deed." *Id.* Smeby brought a quiet-title action to "resolve the parties' conflicting deeds," and the "district court granted summary judgment favoring Smeby." *Id.* at *2.

---

[6] Nonprecedential opinions are not binding but "may be cited as persuasive authority." Minn. R. Civ. App. P. 136.01, subd. 1(c). *Smeby* is persuasive for the reasons stated in this opinion.

On appeal, the Hansons argued that the district court erred because, "once the township vacated the road, the swath comprising it reverted to the Nesses and was conveyed from the Nesses to the Thomases by operation of Minnesota Statutes section 507.17." *Id.* at *4. The Hansons maintained that "the Ness-to-Thomas deed conveyed the entire road," even though the property description omitted the road. *Id.* The Hansons argued that the Thomas-to-Hanson deed "that expressly included the road conveyed title to them." *Id.*

This court disagreed with the Hansons and affirmed summary judgment in favor of Smeby. We concluded that the statutory exception to the presumption applied because the Ness-to-Thomas deed expressed the intention *not* to convey the vacated road to the Thomases.

> The flaw in [the Hansons'] argument is that the statute's exception phrase, "unless such conveyance expresses a contrary intention," describes the Ness-to-Thomas deed as it regards the road. The metes and bounds description of the parcel conveyed to the Thomases defines the boundary as the "westerly line of a dedicated public road" and "along the northerly line of said dedicated public road." *This demarcation expressly excludes the L-shaped platted road from the conveyed parcel, therefore "expressing a contrary intention" than the statutorily presumed intention to convey the road.*

*Id.* (emphasis added).

Applying similar reasoning to this easement agreement, we conclude that the Gelaos conveyed to the township an easement interest "over, under, and across their Parcels (the 'Easement Area')" and that the "Parcels" were "legally described in Exhibit B." Exhibit B—the metes and bounds description of the "Parcels"—describes Lot 1 and Lot 2

13

"together with . . . *[t]hat part of the Public Roadway, as platted in Hexum's subdivision* . . . described as follows." (Emphasis added.) The description that "follows" describes precisely and only parcel A. Like the legal description at issue in *Smeby*, the demarcation in Exhibit B excludes parcel X. We conclude that the easement agreement's terms "express a contrary intention" and therefore the statutory presumption that the conveyance included the entire vacated roadway does not apply. *See* Minn. Stat. § 507.17 (stating that the presumption applies "unless such conveyance expresses a contrary intention").

The easement agreement therefore includes an unambiguous legal description of the "Parcels" subject to the township's easement—Lot 1, Lot 2, and parcel A. If we interpreted the agreement to convey an easement in the *entire* abutting vacated roadway—parcel A and parcel X—we would render Exhibit B meaningless. And courts must "attempt to avoid an interpretation of the contract that would render a provision meaningless." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990).

The township appears to recognize that its interpretation of "Lot 1 and Lot 2" in the easement agreement would render Exhibit B's description of parcel A meaningless. The township's brief states that, "[a]lthough [the Gelaos'] deed includes additional language (and, thus, that same additional language is included in the Easement), it is redundant." And the township accurately states that the legal description of the Gelao property in the easement agreement was "an exact copy" of the legal description in the 2003 deed—which predated the 2009 vacation of roadway to which we refer as parcel X. In other words, the

14

township concedes that Exhibit B to the easement agreement describes the Gelao property as of 2003 and *not* as of the date of the easement agreement in 2020.

In sum, the easement agreement conveyed a utility easement to the township to go "over, under and across" Lots 1 and 2 and *part of* the vacated roadway—parcel A. Because Exhibit B exactly described only parcel A, it excluded parcel X and the statutory presumption in section 507.17 does not apply to the parties' dispute. Thus, the township does not have an easement in parcel X. We therefore reverse the district court's decision granting summary judgment in favor of the township and denying summary judgment in favor of the Gelaos on the easement issue.

**Reversed.**